POLICE COMMISSIONER OF BOSTON *vs.* CITY OF BOSTON & others.

Suffolk.    March 11, 1921. — September 15, 1921.

Present: RUGG, C. J., BRALEY, PIERCE, CARROLL, & JENNEY, JJ.

*Mandamus.    Boston.    Police.    Municipal Corporations.*

Upon a report by a single justice of this court to the full court of a petition for a writ of mandamus, the respondent's answer and return and facts found by the single justice, the full court can make no findings of fact and there is presented no question involving the exercise of judicial discretion, but merely the question of law, whether, upon the facts alleged and admitted or found, the petitioner as of right is entitled to the issuance of the writ.

By St. 1906, c. 291, § 8, the power and duty of deciding the nature and the extent of land necessary for accommodations for the police of the city of Boston is vested exclusively in the police commissioner: the responsibility is his alone and his decision with regard thereto is not subject to the review, revision or approval of any other officer, board or tribunal.

When the police commissioner of the city of Boston has determined the general location and the size of a lot of land necessary to furnish accommodations required for the Boston police, it is his duty to communicate such conclusion to the governing officers of the city, and it thereupon becomes their duty to go forward and complete the work of furnishing the accommodations thus required by acquiring a suitable lot of land and causing to be erected a suitable building, adequate to meet those requirements both as to size and location.

The fact that in 1918 the city of Boston purchased a lot of land for the purpose of erecting thereon accommodations for a certain division of the Boston police, which in 1917 had been approved by the police commissioner then in office and upon which the projected building never was erected, does not justify a refusal by the city council to comply with a requirement in 1920 by the police commissioner then in office of some lot of land situated within the boundaries of the police division referred to and of a specified area which was greater than that of the lot previously purchased and then owned by the city, if the commissioner in office in 1920 had determined that a lot of the general location and size so specified by him was necessary for the accommodation of the police.

Upon a refusal by the city council of Boston to adopt, upon recommendation of the mayor, an order for an appropriation of money for the purchase of a lot of land in a location and of a size which the police commissioner of the city had stated in a letter to the mayor, transmitted by him to the council, was needed to meet requirements for the accommodation of a division of the Boston police, a writ of mandamus was issued, upon a petition by the commissioner against the city, the mayor and the city council, in effect requiring the respondents to proceed forthwith to consider making provision for the police department in substantial accordance with the specifications set forth in the commissioner's letter, and that in so doing they should exclude from their deliberations and action every site for a building not containing at least the ground area specified in that letter.

PETITION, filed on October 7, 1920, for a writ of mandamus to and against the city of Boston and its mayor and city council, " requiring and commanding the said mayor and the said members of said city council, severally and respectively, in the exercise of their several and respective lawful functions, as members of the government of said city, and by such appropriate action to provide — by the use or acquisition of requisite lands, and by the construction of requisite buildings, and by raising necessary funds, and by making necessary appropriations of money therefor — accommodations for the police of said city, as specified in the requirements of the police commissioner, as set forth " in a letter dated September 10, 1920, the substance of which is set out below.

The respondents answered. The petition then was heard by *Carroll, J.*

The letter of September 10, 1920, was from the petitioner to the mayor of Boston, and in substance was as follows:

" Referring again to my communications heretofore addressed to your Honor under dates of April 10 and December 17 of 1919, and of April 21, May 29 and August 9 of 1920, relating to necessary accommodations to be provided by the city of Boston for police division two, the traffic squad and property clerk, I find myself compelled by the insistent duties of my office to again respectfully make demand upon the city of Boston to provide forthwith and without further delay necessary accommodation for police division two, the traffic squad and property clerk. Such accommodations, which I advise your Honor are so required by me as police commissioner for the city of Boston, are substantially and specifically as stated on the memoranda as attached hereto, setting forth required area, floor space and arrangement for occupation and use of building. I beg further to advise your Honor that for the efficient utilization and service of the police department, the buildings as above specified must be located within the boundary lines of division two, and can be located on the lot at the corner of Milk and Sears streets.

" I respectfully request that as mayor of the city, and as its official representative, you will immediately take cognizance of the requirements herein set forth, and take or cause to be taken appropriate and effective action by the city government, to provide by acquisition, purchase, or otherwise a suitable site for the

immediate construction of buildings in accordance with the requirements and specifications above referred to, and to provide by requisite appropriation funds for acquiring such site and for immediate construction of such building.

" Your Honor is well aware of the exigencies of the public service and the public welfare, to which I have heretofore in several written communications called your attention to and which imperatively demand action by the city of Boston in compliance with the requirements of the police commissioner for the necessary accommodation of the police, without which the efficiency of the police department will be, indeed, has been seriously impaired.

" The duties of my office require me to further respectfully advise your Honor that I must and shall immediately seek by appropriate legal procedure to ensure action by the city of Boston, by its officials having authority in the premises, to provide the accommodations for the police department herein above specified as necessary to meet the requirements of the police commissioner as authorized and imposed by law."

Accompanying the letter were detailed schedules of the " required area, floor space and arrangement for occupation and use of " a building of six floors and a basement with a first floor area of five thousand seven hundred fifty-five square feet.

Other material allegations of the petition and of the answer and findings of fact by the single justice are described in the opinion. The single justice reported the case to the full court for determination upon the petition, answer and return and his findings of fact.

*H. Parker (J. H. Devlin, Jr.,* with him), for the petitioner.

*A. D. Hill (S. Silverman* with him), for the respondents.

RUGG, C. J.    This is a petition for a writ of mandamus.    The petitioner is the police commissioner for the city of Boston.    The respondents are the city of Boston, the mayor of the city of Boston and the nine members of the city council of the city of Boston. The general purpose of the petition is to compel the respondents to provide additional accommodations for the police of the city of Boston.    The case comes before us by report on the petition and answer, certain records of the city council incorporated in the answer and admitted as evidence, and findings of fact made by the single justice.

It is alleged in the petition and admitted by the answer that

"accommodations, buildings, and equipment therefor for the police of said city, in addition to and in substitution for those now and heretofore in use, have long been of imperative necessity to maintain and utilize the police force of said city, and to preserve and promote its efficiency, and the health and welfare of the members of said police force," and that the petitioner has notified the respondents of the specific requirements for accommodation for the Boston police and has made due demand and requirement that the same be provided, and that "immediate provisions by the said city of Boston for the said accommodations for the police of said city, as specified and required as aforesaid, by the police commissioner, is of imperative and insistent necessity, for the welfare, health, and efficiency of the members of the said police force and for the maintenance and preservation of the public peace and order." The findings of fact by the single justice in substance are that additional accommodations and buildings for the Boston police have long been and are now needed to maintain and utilize that police force and to preserve and promote its efficiency and the health and welfare of its members and that the petitioner has made due requisition therefor and that the respondents have not in fact provided such accommodations or buildings and have taken no further steps to that end than are set forth in the record. That action briefly summarized is that on June 8, 1914, the then mayor of Boston called the attention of the city council to the necessity for further accommodations for the police department and advised the acceptance of St. 1913, c. 263, which authorized the erection of a building for the use of the police and other departments and the sale of certain lands and the appropriation of the proceeds for the new building. The statute was accepted by the city council. Appropriation was made for the cost of a proposed new building to be used for a police station and school purposes on the site of the "Old Probate Building." By July, 1916, that project had been abandoned and that appropriation was rescinded in September, 1916, and at the same time an appropriation of $15,000 "for plans and temporary quarters for police station in Court Square" was passed. Subsequently sites on Arch and Oliver streets, and on Franklin Street were considered, one of which at least was approved by the then police commissioner, but neither was purchased. In November, 1917, as the culmination of negotiations and proceed-

ings, appropriation was made for the purchase of a site at Arch Street and Hawley Place and title thereto was acquired by the city on or about January 30, 1918. Apparently from this time on for a considerable period war conditions made it inadvisable to attempt to build. On September 29, 1919, the city council authorized and on October 2, 1919, the mayor approved the preparation of plans and specifications for a new building for Police Station 2. On February 9, 1920, the mayor sent a communication to the city council recommending the sale of the Arch Street and Hawley Place site and the purchase of a larger lot at the corner of Milk and Sears streets at an initial cost of about $45,000 less than that of the other lot. From and after that time until the filing of the present petition on October 7, 1920, the mayor sent to the city council four further separate communications each recommending the purchase of the lot at Milk and Sears streets. By five affirmative and four negative votes the original and each subsequent order or proposal to that end was rejected by the city council, a two thirds vote of its members being requisite for favorable action. During that period also the acquisition of another site known as the Revere House property had been considered by the city council and disapproved by the mayor.

The position of the police commissioner so far as now material is, briefly stated, that in 1917 the Arch Street and Hawley Place site was approved by the person then holding that office. It is open to inference, although not expressly stated or found, that in April, 1919, the present incumbent would have been satisfied with the immediate erection of a building on that site. On December 15, 1919, at the request of the mayor the attention of the petitioner was directed to the Milk and Sears streets site and two days later he wrote the mayor saying that he favored the purchase of the latter site provided there should be " no delay in the construction of a new Station 2." On April 21, 1920, the petitioner wrote to the mayor reviewing somewhat the necessity for additional accommodations for the police, referring to the obligation imposed by statute upon the city of Boston to provide such accommodations as the police commissioner may require, reiterating his demand for compliance with that obligation and concluding in these words: " I much prefer the Milk and Sears Streets site to the Hawley Street site " for reasons which he briefly set forth. On May 29,

1920, in reply to a letter from the mayor transmitting an order of the city council requesting that the police commissioner make an investigation respecting the advisability of the Revere House site for Police Station 2, police headquarters, and the municipal courts of Suffolk County, the petitioner declined to consider that proposition, because it involved provision for other municipal requirements and inevitably involved delay for the police need, which, as he said, "will admit of no delay." This was equivalent to a determination that the Revere House site did not meet the requirements. On August 9, 1920, the petitioner wrote to the mayor that "my requirements for a structure that will properly house Station 2, the Traffic Division and the Property Clerk call for a ground area of about fifty-eight hundred (5800) square feet. It is obvious that the Hawley Place site, having a ground area of but thirty-eight hundred and sixty-two (3862) square feet, does not meet this requirement. . . ." On September 10, 1920, the petitioner again wrote to the mayor an urgent letter in categorical terms demanding immediate provision for the "necessary accommodation for police division two, the Traffic Squad and Property Clerk. Such accommodations . . . are substantially and specifically as stated on the memoranda as attached hereto, setting forth required area, floor space and arrangement for occupation and use of Building. . . ." No direct reference is made in the letter to the Arch Street and Hawley Place site but (1) the first floor area required as set forth in the attached memoranda is five thousand seven hundred fifty-five square feet, (2) it is said that the building "can be located on the lot at the corner of Milk and Sears streets" and (3) specific request is made for action "to provide by acquisition, purchase, or otherwise a suitable site." Each of the letters of the petitioner dated April 21, May 29 and August 9, 1920, respectively was seasonably transmitted by the mayor to the city council.

The question presented on this form of report is not one involving the exercise of judicial discretion, but one of pure law whether upon the facts admitted or found the petitioner is entitled as of right to the issuance of the writ. This court can make no findings of fact in this form of proceeding, but must declare the law applicable to the facts admitted or found. *Boucher* v. *Salem Rebuilding Commission,* 225 Mass. 18.

The statutes, in the light of which that question of law must be determined with reference to the pertinent facts already narrated, may be briefly stated. The method of appointment of the police commissioner for the city of Boston and his powers are set forth in St. 1906, c. 291. By § 8 of that act it is provided that "The city of Boston shall provide all such accommodations for the police of said city as said police commissioner may require. All buildings and property used by said police shall be under control of said police commissioner." The power and the duty of deciding and deciding finally the nature and the extent of the land necessary for accommodations for the police of the city of Boston is vested exclusively in the police commissioner. That subject has been placed by the General Court wholly within the sound judgment and wise discretion of the police commissioner. His rational decision in this respect is not subject to the review, revision or approval of any other officer, board or tribunal. The responsibility is his and his alone. It is not and cannot be shared with anybody else. He cannot select the precise lot but he can determine its size and the neighborhood or district within which it shall be located. It is his duty, having determined the extent of the accommodations required for the Boston police, to state his conclusions concerning those needs both as to general location and size of lot to the governing officers of the city of Boston. When the police commissioner has done his duty in that particular, it becomes the duty of the city government to go forward and complete the work of furnishing the accommodations thus required by acquiring a suitable lot of land and causing to be erected a suitable building, adequate to meet those requirements both as to size and location. The charter provisions respecting the taking of land by purchase or eminent domain by the city of Boston are found in St. 1909, c. 486, § 2, in these words: "All sales of land other than school lands, all appropriations for the purchase of land other than for school purposes, and all loans voted by the city council shall require a vote of two thirds of all the members of the city council; and shall be passed only after two separate readings and by two separate votes, the second of said readings and votes to be had not less than fourteen days after the first," and in § 31, in these words: "At the request of any department, and with the approval of the mayor the board of street commis-

sioners, in the name of the city, may take in fee for any municipal purpose any land within the limits of the city, not already appropriated to public use. Whenever the price proposed to be paid for a lot of land for any municipal purpose is more than twenty-five per cent higher than its average assessed valuation during the previous three years, said land shall not be taken by purchase but shall be taken by right of eminent domain. . . . No land shall be taken until an appropriation by loan or otherwise for the general purpose for which land is needed shall have been made by the mayor and city council by a two thirds vote of all its members. . . ."

It is manifest from the debates of the council, which are incorporated in the record, that the minority of four, whose negative votes prevented the authorization of the purchase of the lot at the corner of Milk and Sears streets, voted as they did in large part if not entirely, for the reason that the lot already owned by the city on Arch Street and Hawley Place was thought by them to be adapted for use for a police station and would meet the requirements of the law therefor. There is no finding that the reasons stated by these members in debate were not the real reasons. Every presumption is in favor of good faith. *Nevins* v. *City Council of Springfield*, 227 Mass. 538, 541. *Duffy* v. *Treasurer & Receiver General*, 234 Mass. 42, 50. That reason is untenable and unsound as matter of law. The letters of the police commissioner of April 21, August 9 and September 10, 1920, to which full reference already has been made, demonstrate that he has decided that the Arch Street and Hawley Place site already owned by the city does not conform to his requirements. It will not afford " the accommodations for the police " such as he requires. No argument can make plainer than the figures themselves that a required ground area of about fifty-eight hundred square feet or at least of fifty-seven hundred fifty-five square feet, as specifically set forth in his detailed requirements of September 10, 1920, cannot by any possibility be obtained from a lot of land containing only thirty-eight hundred sixty-two square feet. The latter is the area stated in the letter of the petitioner to the mayor under date of August 9, 1920, which was transmitted to the city council and the correctness of which does not appear to have been challenged in the debate reported in the record or elsewhere. It is of no

material consequence in this connection whether the area of the Arch Street and Hawley Place lot be three thousand eight hundred sixty-two square feet, or three thousand six hundred ninety-seven square feet, or four thousand seven hundred sixty-two square feet, the two latter figures being mentioned in other letters written in 1917 in the negotiations preceding its purchase and printed in the record. In any event that lot fails to meet the present requirements of the police commissioner. The responsibility in this particular rests wholly with the police commissioner. The city council have no voice whatever under St. 1906, c. 291, § 8, in deciding the ground area needed for the building. When the police commissioner has fixed the area of land which he deems necessary, that matter is set at rest. The only function of the city government is to provide a lot of at least that area. In this connection the approval by the police commissioner of 1917 of the Arch Street and Hawley Place lot is no longer binding upon him. Doubtless if a building had been erected on that lot within a reasonable time after that approval, it would have conformed to the requirement. A long time has since elapsed. The present requirement of the police commissioner must be presumed to be founded upon changed conditions rendering imperative larger accommodations.

It is plain that the members of the city council should proceed in the performance of their duty in the light of the rule of law that the site now owned by the city does not conform to the requirements of the police commissioner and therefore cannot be considered in that connection. It must be presumed that as soon as they know the controlling principle of law, they will govern themselves according to it and will proceed at once to act as required by St. 1906, c. 291, § 1. *Attorney General* v. *Apportionment Commissioners*, 224 Mass. 598, 611.

It becomes unnecessary to consider the other questions raised at the argument.

A writ of mandamus is to issue to the effect that the respondents shall proceed forthwith to consider making provision for the police department in substantial accordance with the specifications set forth in the letter of the petitioner to the mayor dated September 10, 1920, and that in so doing they shall exclude from their deliberations and action every site for the building not con-

taining at the least a ground area of five thousand seven hundred fifty-five square feet.

<em>So ordered.</em>