JOHN T. SWIFT, executor, *vs.* EVELYN F. CROCKER & others.

Bristol.    October 24, 1927. — January 20, 1928.

Present: BRALEY, CROSBY, PIERCE, CARROLL, & WAIT, JJ.

*Probate Court*, Appeal. *Executor and Administrator. Will*, Construction. *Devise and Legacy*, What estate, Specific bequest. *Equity Jurisdiction*, Bill for instructions.

Upon an appeal, by one only of several persons named as beneficiaries under a will, from a final decree of the Probate Court giving instructions to the executor in answer to eleven questions asked relating to the construction of the will, the propriety of the entire decree was for this court, who under G. L. c. 215, § 28, might deal with the interests of others than the appellant so far as they were affected by the decree.

A testatrix about seventy years of age and possessed of an estate of about $65,000, including personal property, a dwelling house and land about it, drew her will without assistance from a lawyer and without knowledge of the law adequate to a clear and indubitable declaration of her wishes.

In ten unnumbered paragraphs, she gave pecuniary legacies, eight of $1,000 each, one of $500, and one of $250, using the words "bequeath" in nine instances and "give and bequeath" in the second. Following such provisions, she stated: "To . . . [H] I give and bequeath the sum of one thousand ($1000) dollars. Also to the same the use of my home during her life, and my executor to see that she is comfortable. If she does not so desire, it is to become a Community House or otherwise after her death. It is to be called the . . . [designating two names]. I wish my niece . . . [Z] consulted in all matters in regard to it. The front lots to be used as rental as at present. The rear lots to be used to extend my niece's husband's business if he so desires." Immediately following was this paragraph, unnumbered: "First and always I wish my niece . . . [Z] to have whatever income is necessary for her every comfort and pleasure without stint, during her life; also all personal effects belonging to me — jewelry house hold goods, absolutely everything she desires." Next was the naming of an executor, "desiring him to carry out my wishes to the end; to take care of my charities, using all incomes and principal or parts of the principal for the upkeep of the home and its surroundings. The 'home' if thought desirable in the future, to be used as an 'Old Ladies' Home.'" Z was the sole heir at law and next of kin of the testatrix. Upon a petition for instructions, it was *held*, that

(1) The language of the will admitting different constructions, the intent of the testatrix was to be ascertained from the whole instrument, and when so ascertained was to be given effect unless prevented by some positive rule of law;

(2) The executor was entitled to instructions only with respect to present duties;

(3) Until release by or death of H, no charitable trust arose with respect to the house, no trustee needed to be appointed, and no instruction with regard thereto should be given;

(4) The $9,750 in pecuniary legacies should be paid without deduction of any of the income from said sum for Z;

(5) Z's right to specific "personal effects" of the testatrix, jewelry, household goods and everything she desired therefrom, was absolute;

(6) H had a right to the exclusive use of the house as a place of residence at any time during her life for so long as she desired, with the use of such of the land as would pass by a deed conveying the house;

(7) The requirement to "see that" H "is comfortable" imposed no greater obligation than to keep the house in reasonable repair;

(8) The expenditure of income for the benefit of H was clearly subject to a prior right in Z if "necessary for her every comfort and pleasure" during the latter's life;

(9) Z during her life was entitled to the real estate and its income subject to H's right above stated.

PETITION, filed in the Probate Court for the county of Bristol on March 9, 1927, by the executor of the will of Mary C. Gifford, late of Westport, for instructions in answer to the following questions:

"1. Does the provision, 'First and always I wish my niece Mabel A. Zerbone to have whatever income is necessary for her every comfort and pleasure without stint, during her life; also all personal effects belonging to me — jewelry, household goods, absolutely everything she desires,' take precedence over all other bequests in said will?

"2. Shall your petitioner pay the money bequests to Evelyn F. Crocker [$1,000], to the Watuppa Grange [$1,000], to Sarah L. Greene [$1,000], to Henry M. Cranston [$1,000], to Christopher Borden [$1,000], to Olive J. Wordell [$500], to Frances E. Willard Settlement [$1,000], to Stephen G. Palmer [$1,000], to Jennie Freelove [$250], to Lilian Marshall [$1,000], to Ethel Hicks [$1,000]?

"3. Is said Mabel A. Zerbone entitled to receive the income from the amount of said legacies during her life?

"4. What is the meaning of the provision, 'Also to the same Ethel Hicks the use of my home during her life and my executor to see that she is comfortable'?

"5. Whether or not any duty is imposed upon your petitioner with reference to paying to said Ethel Hicks any income during her life and if so in what amount?

"6. Is Mabel A. Zerbone entitled to receive all the income of the estate during her life before any right accrues to said Ethel Hicks to receive any income therefrom?

"7. Do the provisions in said will with reference to the home of said deceased, 'If she (Ethel Hicks) does not so desire, it is to become a Community House or otherwise after her death. It is to be called the William H. Gifford Memorial or The William and Mary Home,' and, 'The "home" if thought desirable in the future to be used for an Old Ladies' Home,' set forth a valid charitable trust, or are they invalid so that the charitable trust fails and said Mabel A. Zerbone, as the only heir at law, is entitled to receive the estate free from said provisions for charity?

"8. If a valid charity is set forth, is the estate to be used as a Community House, and if so, for what community, or is it to be used for an Old Ladies' Home, and if so for what old ladies; or for what charity, if any, shall said estate be used?

"9. Shall your petitioner apply for appointment as trustee under said will?

"10. What authority or what person is to determine, and when, if at all, if 'the "home", if thought desirable in the future, [is] to be used for an Old Ladies' Home'?

"11. Shall your petitioner pay over to said Mabel A. Zerbone as the only heir at law all of the estate of said deceased?"

The petition was heard by *Hitch*, J., by whose order a final decree was entered instructing the petitioner as follows:

"The testatrix intended that the money legacies to and including the gift of $1,000 to Ethel Hicks, should first be paid, and that the subsequent provisions of the will were to relate to the disposition of the rest and residue of her estate.

"Her underlying purpose was to provide that her home should eventually be used, subject to certain provisions in favor of Ethel Hicks and Mabel A. Zerbone, either as a Community House or an Old Ladies' Home. This constitutes a valid public charity.

"She intended to give Ethel Hicks the right to personally occupy the house during her life if she chose. By the use of the word 'home' as respects Ethel Hicks she intended to designate the particular house in which the testatrix lived. If Ethel Hicks did not desire to so occupy it it was to become a Community House or Old Ladies' Home 'otherwise' [:?] that is, if she did [not?] desire to occupy it ·or upon her death it was to be used as a Community House or Old Ladies' Home.

"The provision that the executor is to see that 'she is comfortable' in view of the gift of the income and household goods to Mabel A. Zerbone, and in light of the testatrix's dominant purpose to preserve the house for a charitable purpose with the expectation of there eventually being some income for the executor or trustee to use to take care of the charity (she did not regard the provision for the benefit of Ethel Hicks and Mabel A. Zerbone as charities) means that the house was to be made comfortable for Ethel Hicks, that is, kept in repair, heated and lighted, not that she was to be supported therein. The testatrix destroyed the home as a going concern by the gift of the furnishings to Mabel A. Zerbone.

"The testatrix intended that Mabel A. Zerbone should have for her life so much of the income from the remainder of the estate as would provide liberally for her comfort and pleasure. The testatrix undoubtedly anticipated that this would not take all the income of the remaining estate and expected that there would be income left to provide, in part at least, for the upkeep of the house, but nevertheless, if all the income is needed for the comfort and pleasure of Mabel A. Zerbone, the latter would be entitled to it and the upkeep of the house would then have to be paid from the principal of the estate.

"And the interrogatories are answered specifically as follows: —

"Interrogatory 1. No, excepting that Mabel A. Zerbone is entitled to the specific chattels given her such as jewelry and household goods.

"Interrogatory 2. Yes.

"Interrogatory 3. No.

"Interrogatory 4. Ethel Hicks has the right to occupy personally the house during her life if she chooses to so occupy it, and if she does so occupy it, then said house is to be kept, at the expense of the estate, in good repair, wind and weather tight, heated and lighted. She is not entitled to support.

"Interrogatory 5. No.

"Interrogatory 6. Mabel A. Zerbone has first claim on all income received from the remaining estate, that is, the estate remaining after the money legacies are paid, to the extent that it is necessary for her comfort and pleasure.

"Interrogatory 7. The gift of the home as a Community House or Old Ladies' Home constitutes a valid public charity.

"Interrogatory 8. It does not appear that the executor has any present duties in respect to the question here asked, and as that question may not have to be determined for some time and conditions may then have changed, he is not entitled to a present answer.

"Interrogatory 9. The petitioner should apply for appointment as trustee.

"Interrogatory 10. The same answer as to Interrogatory 8.

"Interrogatory 11. No."

Mabel A. Zerbone alone appealed.

G. L. c. 215, § 28, reads as follows:

"The Supreme Judicial Court may, upon appeal, reverse or affirm, in whole or in part, any decree or order of the Probate Court, and may enter such decree thereon as the Probate Court ought to have entered, may remand the case for further proceedings, or make any other order therein as law and justice may require."

*D. R. Radovsky,* (*H. W. Radovsky* with him,) for Mabel A. Zerbone.

*R. A. Cutter,* Assistant Attorney General, for the Attorney General.

*W. E. Fuller,* for Ethel Hicks.

WAIT, J. This petitioner sought the direction of the Probate Court in the construction of the will of Mary C. Gifford, and instruction with regard to his duties as executor thereunder. Notice was given to her heirs at law, and to all the legatees and devisees under the will. From the decree only one respondent, Mabel A. Zerbone, the sole heir at law and a donee under the will, appealed to this court. Nevertheless, the appeal brings up the decree and we can deal with the interests of others affected by the decree, G. L. c. 215, § 28, necessarily involved in the determination of the matter before us. See *Day* v. *Nichols,* 228 Mass. 236, 239.

Mrs. Gifford drew her own will without assistance from a lawyer, and without knowledge of the law adequate to clear and indubitable declaration of her wishes. She did not number the items and she has left room for argument in regard to the precedence which one benevolent wish is to take over another. The will admits of different constructions. In such circumstances the law is well established that the court will "ascertain the intent of the testator from the whole instrument, attributing due weight to all its language, and then give effect to that intent unless prevented by some positive rule of law." *Ware* v. *Minot,* 202 Mass. 512, 516. *Temple* v. *Russell,* 251 Mass. 231. It will not create an intent where none appears, nor permit some of the words of the will to defeat an intent fairly to be deduced from study of the

will as a whole and of the circumstances in the light of which it was executed. *Crowell* v. *Chapman*, 257 Mass. 492.

After the conventional introductory sentences and direction for the payment of just debts and funeral expenses, the will proceeded: "I bequeath and devise as follows: To . . . [naming the donee] I bequeath the sum of . . . [naming the amount] dollars." There were ten such provisions alike in form except that in the first she directed that if the donee named was not living at "my death" the sum was to go to the donee's son, and that, in the second, she used the words "I give and bequeath." The total amount of these gifts was $8,750. Then followed: "To Ethel Hicks daughter of Dr. Charles A. Hicks, I give and bequeath the sum of one thousand ($1000) dollars. Also to the same Ethel Hicks the use of my home during her life, and my executor to see that she is comfortable. If she does not so desire, it is to become a Community House or otherwise after her death. It is to be called the William H. Gifford Memorial or The William and Mary House. I wish my niece Mabel A. Zerbone consulted in all matters in regard to it. The front lots to be used as rental as at present. The rear lots to be used to extend my niece's husband's business if he so desires.

"First and always I wish my niece Mabel A. Zerbone to have whatever income is necessary for her every comfort and pleasure without stint, during her life; also all personal effects belonging to me — jewelry household goods, absolutely everything she desires.

"I hereby appoint John T. Swift of the Citizens Savings Bank as my Executor; desiring him to carry out my wishes to the end; to take care of my charities, using all incomes and principal or parts of the principal for the upkeep of the home and its surroundings. The 'home' if thought desirable in the future, to be used as an 'Old Ladies' Home.'"

Then came the *in testimonium* clause.

It is agreed, by stipulation, that the value of the estate will, probably, not exceed $65,000; that Mabel A. Zerbone is the sole heir at law; that at the time of her death the testatrix was about seventy years of age; that the will is in her own handwriting; that the premises occupied by her as her

home was real estate in the north part of Westport, about three quarters of a mile from the easterly line of Fall River and easterly of the North Watuppa pond, on which is an old story and a half farm house of ten rooms, five of them on the upper floor with sloping ceilings and dormer windows; that in the rear is about half an acre of land with a large barn, a two-car garage and a woodshed; that Westport has a population of between 3,000 and 3,500 people.   The will is dated February 5, 1926, and was duly admitted to probate on May 14, 1926.

The petitioner asks for instruction upon eleven points. He is not entitled to an answer upon some of them.   The rule is established that instructions can be obtained only in regard to present duties.   *Hall* v. *Cogswell*, 183 Mass. 521. *Hill* v. *Moors*, 224 Mass. 163, 165.   *Murray* v. *Roman Catholic Home for Orphans*, 232 Mass. 384.   No present occasion appears for the appointment of any one as trustee. Ethel Hicks is living and has not released her right to occupy the home.   Until her death or until such release no duty arises in regard to what shall be its use as home or community house.   No charitable trust can arise in regard to it before she has released or died.   Accordingly no instructions will be given in answer to requests numbered seven, eight and ten.

The remaining requests relate to present duties toward Mabel A. Zerbone, Ethel Hicks and the donees of specific sums.

It is noteworthy that while the testatrix "gives" or "bequeaths" or "devises" to the other objects of her bounty, she does not use either word with reference to Mrs. Zerbone. She wishes her "to have . . . all personal effects belonging to me — jewelry household goods, absolutely everything she desires," as well as "whatever income is necessary for her every comfort and pleasure without stint, during her life." She is to be consulted in all matters in regard to the proposed "home."   Her husband is to use the rear lots of the home estate for the purposes of his business if he wishes.   The provision dealing with her begins "First and always." *Butler* v. *New England Trust Co.* 259 Mass. 39.   Placed where it is, we think the paragraph deals with what is left after the specific sums previously given have been taken from the estate.   It

deals with the "personal effects" of the testatrix; by which she means, not all her personal property as the law classifies property, but all the articles used by her in ordinary living — clothing, jewelry, household goods. Of these Mrs. Zerbone is to have "absolutely everything she desires." It deals also with income. The testatrix with some $65,000 worth of property to dispose of began with outright gifts of small amounts to eleven beneficiaries, no single gift greater than $1,000. She thus disposed of $9,750. Then she took up her real estate and gave a right to Miss Hicks to use it in comfort for her life. The mind of the testatrix turned toward the use of the income of the remainder of the property. She makes provision for Miss Hicks's comfort and for the memorial home, but before anything, "First and always," Mrs. Zerbone must have "every comfort and pleasure without stint" from the executor. She, probably, did not reflect that the law had made Mrs. Zerbone owner of everything undisposed of by her will. She made no conveyance of the residue of the estate beyond $9,750 in pecuniary legacies, a life interest in the home, and such of her "personal effects" as Mrs. Zerbone desired, but she empowered her executor to use all incomes and principal for the "upkeep of the home and its surroundings," and made it further his duty to use it for the comfort of Miss Hicks if she used the home, and "without stint" to use income for Mrs. Zerbone.

Nothing in the will indicates a conscious purpose to give the corpus of the estate to Mrs. Zerbone, or to subject what was expressly given others to burden in her favor. The Probate Court was right in deciding that the pecuniary legacies are not to be subordinated to the rights of Mrs. Zerbone. The requests 1, 3 and 11, are properly answered No. Request 2 is correctly answered Yes.

The remaining questions relate to the rights of Miss Hicks in the real estate and to the duty of the petitioner with respect to her. No title to the house is expressly given her. Her right is limited to the exclusive use of the house as a place of residence at any time during her life for so long as she desires, with the use also of such of the land as would pass by a deed conveying the house. See *Schon* v. *Odd Fellows Build-*

*ing Association,* 255 Mass. 465, 468.   The language of the
will justifies an inference that there is land, possibly within
the same enclosing walls or fences, which has not been re-
garded as attached to the house lot.   The language makes
plain that the "front lots" and the "rear lots" are not sub-
jected to the control of Miss Hicks.

The requirement that the executor "see that she is com-
fortable" imposes no greater obligation than to keep the
house in reasonable repair.   The gift of household goods to
Mrs. Zerbone is inconsistent with an intent to leave to Miss
Hicks a furnished house which is to be kept up by the exec-
utor from the income of the estate.   The expenditure of
income for the benefit of Miss Hicks is clearly subject to a
prior right in Mrs. Zerbone if "necessary for her every com-
fort and pleasure" during the latter's life.

The court, as has already been stated, is not called upon
to decide what may become the duty of the executor in the
event of her death or her failure to use the house.   The
words "If she does not so desire, it is to become a Community
House or otherwise after her death," impose no responsibility
at this moment.   "Or otherwise" as there used, relates to
the character of the use to which the place eventually is to
be put.   There is to be either a community house or an Old
Ladies' Home, but which of them the testatrix does not know.
Neither does she know, nor can any one else know, at what
times during her life Miss Hicks will desire to use the house.
So long as she lives Miss Hicks can demand the use, but she
may not wish it at all times.   It is not until her death, there-
fore, that the suggested charitable use is practicable.   It is
conceivable that the testatrix thought that in the periods
during Miss Hicks's life in which she did not care to use the
house — and it may be simultaneously with her use, with
her consent — it also could be used as a "community house,"
and that, at her death, a final determination whether to con-
tinue such use or to change to an Old Ladies' Home should
be made.   Such a supposition is supported by the provisions
in regard to the renting of the front lots, the use of the rear
lots by Mr. Zerbone, the carrying out of "my wishes to the
end" by the executor, and consultation with Mrs. Zerbone.

But the more reasonable construction is that those phrases are suggestions applicable to the situation that will arise on the death of Miss Hicks or her final rejection of the right to use the house.

It follows that the decree of the Probate Court is to be modified and answers are to be made as follows: To (1) No. But the right of Mrs. Zerbone to specific "personal effects" of the testatrix, jewelry, household goods and everything she desires therefrom, is absolute; (2) Yes; (3) No; (4) Ethel Hicks is entitled to the use of the house and such land as would pass by a deed of "the house" for her life, and the executor should use such of the income from the personal property remaining after the payment of debts, expenses of administration, and payment of the pecuniary legacies, as is required to keep the house in comfortable repair inside and out, but subject to a right in Mabel A. Zerbone during her life to have whatever is necessary for her every comfort and pleasure without stint first paid to her from the income of that principal; (5) No payment other than the pecuniary legacy is required to be made to Ethel Hicks; (6) Mabel A. Zerbone is entitled during her life to so much of the income of personal estate remaining after the payments set out in answer (4) as is necessary for her every comfort and pleasure without stint — to all if required; and to the real estate with its income subject to the right of Ethel Hicks to the use of the house as described in answer (4); (9) No occasion now exists for the appointment of a trustee; (11) No.

Whether a valid charitable trust is created, and what duties will exist if one comes into being need not now be determined.

*So ordered.*