TRUSTEES OF THE PUBLIC LIBRARY OF THE CITY OF BOSTON
*vs.* RECTOR OF TRINITY CHURCH IN THE CITY OF BOSTON
& another.

Suffolk. November 8, 9, 1927.— March 24, 1928.

Present: BRALEY, CROSBY, WAIT, & SANDERSON, JJ.

*Trust*, Construction of instrument creating trust. *Devise and Legacy*. *Municipal Corporations*, Department. *Words*, "Department expenses."

A testator by his will set up trust funds for the benefit of the Boston Public Library; and further provided that in any year when the city did not appropriate for the maintenance of the library at least three per cent "of the amount available for department expenses from taxes and income in said City," the income of the funds should be paid to the rector of a certain church. The trustees of the fund sought instructions as to the distribution of the income in a year when the city did not appropriate for library purposes three per cent of the amount available for departmental expenses, if the expenses of the schools, of the police department, of the licensing board and of the finance commission as departments of the city were included. *Held*, that

(1) The words, "department expenses," were to be construed according to their natural, usual and popular meaning, in the absence of evidence that they were used in a different sense;

(2) Groups of individuals exercising local or internal powers and duties may be deemed to be acting as departments of a municipality, irrespective of the degree or kind of control over them possessed by the Commonwealth as contrasted with the local government;

(3) The words, "department expenses," as used in the will included

expenses of schools, of the police department, of the licensing board and of the finance commission, and were so used by the testator;

(4) The net income of the funds for the year in question should be paid to rector of the designated church.

BILL IN EQUITY, filed in the Supreme Judicial Court for the county of Suffolk on February 25, 1927, and afterwards amended, for instructions.

The suit was heard by *Carroll,* J., upon the pleadings and an agreed statement of facts. He ruled as stated in the opinion and reported the suit to the full court for determination.

*J. P. Lyons,* Assistant Corporation Counsel, for the plaintiffs.

*A. Marshall,* for the defendant Rector of Trinity Church in the City of Boston.

CROSBY, J. This is a bill in equity by the Trustees of the Public Library of the City of Boston, brought in their capacity as trustees of a fund of $100,000 under the will of the late Josiah H. Benton, for instructions as to the proper disposition of the income from this trust fund for the years 1923 and 1924.

The testator was a leading member of the bar, and for some years before and up to the time of his death was president of the board of trustees of the library. He died February 6, 1917, leaving a will dated November 15, 1916, which was allowed by the Probate Court on March 18, 1917. The case was heard by a single justice of this court upon the amended petition, amended answers, and a statement of agreed facts, which the single justice found to be true. The issues involved the construction of certain portions of the eleventh and twelfth clauses of the will, which are as follows:

"Eleventh: I give to the TRUSTEES OF THE PUBLIC LIBRARY OF THE CITY OF BOSTON one hundred thousand dollars ($100,000) to be held as ' THE CHILDREN'S FUND,' and the income applied to the purchase of books for the use of the young . . . .

"Twelfth: All the rest and residue of my property and estate, I give and devise to ARTHUR F. CLARKE of Brookline and HORACE G. WADLIN of Reading, IN TRUST to hold, manage, invest, and reinvest and to apply as follows:

"1, — To pay from the income of said residue and remainder, and if necessary from the principal thereof, the sum of twenty thousand dollars ($20,000) each year in equal quarterly payments, to my wife, MARY A. BENTON, during her natural life.

"2,— And upon the death of my said wife to pay all of said residue and remainder of my estate then remaining and all interest and accumulations thereon, to the TRUSTEES OF THE PUBLIC LIBRARY OF THE CITY OF BOSTON, to be held, managed, invested and reinvested in obligations of any of the New England States or the States of New York, Ohio, Michigan, Illinois, Iowa or Minnesota; and I DIRECT that the same be held and used in the manner following, that is to say:—

"First: — One-half of the net income of such residue and remainder to be applied by the Trustees of the Public Library of the City of Boston for the purchase of books, maps and other library material of permanent value and benefit for said Library; meaning and intending hereby that such income shall be applied for books desirable for scholarly research and use.

"Second: — To hold the other one-half of said residue and remainder as an accumulating fund, the income and interest to be added to the principal and reinvested as principal, until the total amount thereof shall be two million dollars ($2,000,000). And then I DIRECT such total sum of two million dollars ($2,000,000) to be applied to the enlargement of the present central library building in Boston, or to the construction of another central library building in such part of the city as may be then most desirable for the accommodation of the people of said City; such new building to be constructed under the advice of the Librarian of the Library at that time in such manner as may be most desirable for efficient practical working of a library therein.

"It is my desire that the income of the one hundred thousand dollars ($100,000) given by the Eleventh Clause of my will for the 'CHILDREN'S FUND' and the income given by the Twelfth Clause of my will for the purchase of books, maps and other library material of permanent value and benefit,

shall be in addition to the sums appropriated by the City for the maintenance of the Boston Public Library, and that the same shall not be taken into account in any appropriation by the City for that purpose.

"I, therefore, hereby provide that such income of the one hundred thousand dollars ($100,000) given by the Eleventh Clause of my will, and such income as is given by the Twelfth Clause of my will for the purchase of books, maps, and other library material, shall be applied for those purposes only in years when the City appropriates for the maintenance of the Boston Public Library at least three per cent (3%) of the amount available for department expenses from taxes and income in said City.

"In any year when the City does not thus appropriate at least three per cent (3%) of the amount available for department expenses from taxes and income in said City, the income given in said will for the purchase of books shall be paid to the Rector of Trinity Church in the City of Boston to be by him dispensed in relieving the necessities of the poor."

It appears in the agreed facts that if the words "department expenses" as used in the twelfth clause of the will include expenses of the schools, police department, finance commission, and the licensing board, the city of Boston did not in the municipal years ending January 31, 1923, and January 31, 1924, appropriate three per cent of the amount available for department expenses as thus defined; and that if the city had appropriated for the library during the years 1914–1915, and 1915–1916, the last two years prior to the testator's decease, three per cent of the department expenses including therein the expenses of the four units in question, the amount of the appropriations would have been increased over fifty per cent. It is also agreed that at the time the testator made his will in 1916, and from that time up to and including the municipal years 1922–1923 and 1923–1924, the schools and the appropriations and expenditures therefor were under the control of the school committee of the city of Boston; that the revenues were authorized by the Legisla-. ture and were raised by the city tax levy, and credited to

the school committee; that the moneys for maintenance of the schools were appropriated by order of the school committee and expended under its control, with the exception of sums used for the construction and equipment of new buildings and repairs, which were appropriated by the school committee but were expended under the direction of the schoolhouse commission, appointed by the mayor; and that every order of the school committee for the expenditure of money was submitted to the mayor, but the vote of four of the five members of the school committee could override the veto of the mayor.

It is also agreed that during the same period the police department was under the control and management of the police commissioner; that its budget was annually submitted to the mayor and city council, and the revenue for its expenditures was raised by the city tax levy; that the licensing board consisted of three members appointed by the Governor of the Commonwealth, and it submitted its budget to the mayor and city council for approval; that the finance commission consisted of five members appointed by the Governor, and its expenditures were paid from revenue raised by the city tax levy; that the amount to be appropriated annually was fixed by the Legislature, but the appropriation was submitted to the mayor and council for passage by them.

It is further agreed that the school committee, the police department, the licensing board, and the finance commission were not created by ordinance, as were certain departments of the city administration; that in the official publication issued annually as a city document by the city of Boston, from the financial year 1914–1915 to the official year 1922–1923, inclusive, as the "Report of the City Auditor of the Receipts and Expenditures of the City of Boston and the County of Suffolk, Commonwealth of Massachusetts," the appropriations for the library department, for schools, for the police department, the licensing board and the finance commission, were all similarly listed under the uniform heading "Regular Department Appropriations"; that the expenditures for the foregoing departments were also included in each report of the city auditor under the heading

of "City Payments Statement in detail of the expenditures incurred by the several departments, boards and committees of the City Council for which drafts have been made; also payments of debts, interest on debt and payments to Commonwealth of tax and assessments, and one quarter of liquor license revenue."

The agreed facts also show that a copy of the official report of the city auditor for the financial year 1914–1915 was among the books constituting the office library of the testator at the date of his death.

The single justice ruled that the words "department expenses" as used in the twelfth clause of the will included expenses of schools, police department, finance commission, and the licensing board, and accordingly further ruled that the income from the $100,000 fund for the years 1923–1924, and any accumulation thereof for said years, should be paid to the Rector of Trinity Church, to be by him dispensed in relieving the necessities of the poor in accordance with the provisions of the will, and reported the case on the "pleadings, agreed facts, and exhibit," for determination by this court.

The decision of the case depends upon the meaning to be given to the word "department" as used by the testator in the twelfth clause of his will. The well settled rule in the interpretation of wills has often been stated and frequently applied. As was said in *Crocker* v. *Crocker*, 230 Mass. 478, at page 480, "The cardinal and familiar rule in the interpretation of wills is to ascertain from the testamentary words, construed according to their natural meaning, the intent of the testator and then to give effect to that intent unless prohibited by some positive rule of law . . . . It is not for the court to speculate as to what the testator might have done if the exact situation which has arisen had in truth been in his mind when making his will, but to determine the meaning of the words actually used and apply that meaning to the facts presented." *Dove* v. *Johnson*, 141 Mass. 287, 290. *Anderson* v. *Bean*, 220 Mass. 360, 363. To ascertain the intention of the testator it is necessary to consider the language of the will and its general purpose in the light of the circumstances known to him. *McCurdy* v. *McCallum*, 186

Mass. 464, 469. *Crowell* v. *Chapman,* 257 Mass. 492, 495. *Swift* v. *Crocker,* 262 Mass. 321. It follows that the word is to be construed according to its natural, usual, and popular meaning, in the absence of evidence that it is used in a different sense. *Turnbull* v. *Whitmore,* 218 Mass. 210, 214. *Crocker* v. *Crocker, supra.*

It was said in *Commonwealth* v. *Plaisted,* 148 Mass. 375, at page 386: "The several towns and cities are agencies of government largely under the control of the Legislature. The powers and duties of all the towns and cities . . . are created and defined by the Legislature, and we have no doubt that it has the right in its discretion to change the powers and duties created by itself, and to vest such powers and duties in officers appointed by the Governor, if in its judgment the public good requires this, instead of leaving such officers to be elected by the people or appointed by the municipal authorities." See *Metropolitan Railroad* v. *District of Columbia,* 132 U. S. 1, 8. It is plain, therefore, that groups of individuals exercising local or internal powers and duties may be deemed to be acting as departments of a municipality, irrespective of the degree or kind of control over them possessed by the Commonwealth as contrasted with the local government. The facts that the members of the licensing board and finance commission are appointed by the Governor, Sts. 1906, c. 291, § 1; 1909, c. 486, § 17, and that the amount to be appropriated annually for the finance commission is fixed by the Legislature, St. 1909, c. 486, § 20, as amended by St. 1921, c. 81, do not determine whether or not the licensing board and the finance commission are departments of the city of Boston.

Similarly the fact that the schools are removed from the control of the city council, Spec. St. 1919, c. 206, § 2, is not determinative of the question. Although policemen are public officers, a police department may be a department of a municipality. *Adams* v. *Selectmen of Northbridge,* 253 Mass. 408, 409. If the police commissioner, who is appointed by the Governor, St. 1906, c. 291, § 7, notifies the city of Boston that land is needed as a site for a building to be used as police headquarters, the land may be taken under St. 1909,

c. 486, § 31, which provides in part as follows: "At the request of any department . . . the board of street commissioners, in the name of the city, may take in fee for any municipal purpose any land . . . ." *Police Commissioner of Boston* v. *Boston*, 239 Mass. 401, 407, 408. Police officers perform certain duties strictly local, including the enforcement of the city ordinances. "The word 'department' involves the idea of something which forms part of a larger thing . . . ." *Carlyle* v. *County of Oxford*, 30 Ont. L. R. 413, 419.

The words "department expenses" without doubt include expenses of schools, police department, licensing board and the finance commission, and were so used by the testator. In reaching this conclusion it is of some significance that at the time of his death the testator had among the books in his office library a copy of the official report of the city auditor of Boston for the financial year 1914–1915, in which appropriations for the library department, for schools, the police department and finance commission and the licensing board were all similarly listed under the uniform heading "Regular Department Appropriations." It cannot be assumed that the testator did not know what appropriations had been made for these departments. But he may have believed the appropriations for the library previously made to be wholly inadequate, and may have hoped to influence the city materially to increase the appropriation even to the extent of fifty per cent or more by offering this inducement. He may also have believed that the city would increase the appropriation not only because of the provision relating to the gift of income from the $100,000, but because of other provisions in his will by which he had left a large amount to be used for the benefit of the library. It was his intention that the amount appropriated annually for the library should be a sum equal to three per cent of all the money raised by the city tax levy devoted to department expenses, regardless of the manner in which the amount so to be appropriated was determined in particular instances.

It follows that the net income for the years 1923–1924 should be paid to the Rector of Trinity Church, to be dis-

pensed by him as provided in the will, and the plaintiffs are so instructed.   Costs, including counsel fees as between solicitor and client, may be allowed the defendant Sherrill out of the fund in the discretion of a single justice.

*Ordered accordingly.*