POLICE COMMISSIONER OF BOSTON *vs.* CITY OF BOSTON & others.

Suffolk.    January 2, 1962. — January 23, 1962.

Present: WILKINS, C.J., SPALDING, WILLIAMS, CUTTER, & KIRK, JJ.

*Boston. Municipal Corporations*, Contracts, Department. *Public Works. Contract,* For public works, Bidding for contract. *Public Officer. Words,* "Department."

The police commissioner of Boston, although appointed by the Governor pursuant to St. 1906, c. 291, § 7, is an "officer . . . in charge of a department" of the city within St. 1909, c. 486, § 30, as amended by St. 1939, c. 156, § 1, and St. 1955, c. 60, § 2, and the making of contracts by him in behalf of the city for the repair of police buildings is subject to the provisions of § 30 respecting advertising for bids.

BILL IN EQUITY, filed in the Superior Court on September 28, 1960.

The suit was heard by *Lurie, J.*

*James W. Kelleher,* for the plaintiff.

*William H. Kerr, (David J. Saliba,* Assistant Corporation Counsel, with him,) for the defendants.

SPALDING, J.   In November, 1959, the plaintiff, who is the police commissioner of the city of Boston, gave to the defendant Dorgan Electrical Company (Dorgan) six orders for the performance of various types of electrical work at police headquarters. Each order called for a payment of less than $1,000. The total amount of these orders was $5,757.91. Upon completion of the work Dorgan submitted bills which were transmitted by the commissioner to the

city auditor with a request that they be placed on a draft for payment. This the auditor refused. There were forty-three additional orders (each for $975) given to Dorgan for electrical work but these were cancelled before completion. It is agreed that the work called for in all these orders was contemplated as a single project exceeding $2,000 in amount. None of them was awarded on the basis of competitive bidding.

In November, 1959, the commissioner gave to the defendant John J. Curtin Flooring Co., Inc. (Curtin), eight orders for flooring work at police headquarters and at other stations. Each order was for less than $1,000 and the aggregate amount of the orders was $4,635.50. Curtin performed the work and rendered bills which the commissioner transmitted to the city auditor with a request that they be placed on a draft for payment by the city treasurer. Payment was refused by the auditor. It is agreed that the work called for in these orders was contemplated as a single project exceeding $2,000 in amount. There was no competitive bidding with respect to these orders.

Also in November, 1959, the commissioner gave to one Meissner a number of orders for painting certain portions of police buildings. Each order was for less than $1,000. A number of orders, exceeding $5,400 in amount, were cancelled by the commissioner before the work was performed. Work was completed by Meissner on certain orders calling for a total payment of $1,432.61. For these orders he submitted bills to the commissioner who in turn transmitted them to the city auditor with a request that they be placed on a draft for payment by the city treasurer. The auditor refused payment. It is stipulated that the work called for in all orders was contemplated as a single project exceeding $2,000 in amount. None of these awards resulted from competitive bidding.

A controversy having arisen as to the validity of these contracts, by reason of St. 1909, c. 486, § 30, and G. L. c. 149, § 44A, the commissioner brought this bill for declaratory relief. The defendants are the city of Boston, the city

auditor, and the three contractors: Dorgan, Curtin, and Meissner.

The judge, after finding the foregoing facts, which were virtually undisputed, ruled that contracts for the work were subject to the provisions of St. 1909, c. 486, § 30, and G. L. c. 149, § 44A. From a decree in accordance with this ruling the commissioner appealed.[1] The evidence is reported.

Properly no contention is made as to the authority of the city auditor to disapprove the requisitions submitted by the commissioner if they were unlawful. By St. 1909, c. 486, § 23, it is provided that the "auditor may disallow and refuse to pay, in whole or in part, any claim on the ground that it is fraudulent or unlawful and in that case he shall file a written statement of his reasons for the refusal."[2] Nor is any attack made on the decree in so far as it provides that the contracts were subject to the provisions of G. L. c. 149, § 44A, as appearing in St. 1956, c. 679, § 1.[3] The commissioner, however, does challenge that portion of the decree which declares that the contracts were subject to St. 1909, c. 486, § 30. This is the only point argued by the commissioner and we shall confine our decision to that question.

Prior to 1885 the Boston police department was under the management of a board of three commissioners appointed by the mayor, subject to the approval of the city council. St. 1878, c. 244, §§ 1–2. In 1885, the administration of the department was transferred to a board of three commissioners appointed by the Governor. St. 1885, c. 323, § 1. By St. 1906, c. 291, § 7, it was provided that "The

---

[1] None of the contractors appealed.

[2] In refusing payment the auditor stated the reasons for his refusal.

[3] "Every contract for the construction, reconstruction, alteration, remodeling, repair or demolition of any public building by the commonwealth or by any governmental unit thereof, estimated to cost more than five thousand dollars in the case of the commonwealth, and more than two thousand dollars in the case of any governmental unit thereof, shall be awarded to the lowest responsible and eligible general bidder on the basis of competitive bids in accordance with the procedure set forth in the provisions of sections forty-four B to forty-four L . . . . As used herein . . . the term 'governmental unit thereof' shall include every county, city, town, district, board, commission and other public body."

governor, with the advice and consent of the [executive] council, shall appoint a single police commissioner for the city of Boston . . . . Said police commissioner may be removed by the governor, with the advice and consent of the council, for such cause as he shall deem sufficient. . . ." Another section of that statute reads: "The city of Boston shall provide all such accommodations for the police of said city as said police commissioner may require. All buildings and property used by said police shall be under control of said police commissioner. . . . All expenses for the maintenance of buildings, the pay of the police, clerks, stenographers and other employees, and all incidental expenses incurred in the performance of the duties of said commissioner or in the administration of said police shall be paid by the city of Boston upon the requisition of said police commissioner." St. 1906, c. 291, § 8.

The city charter of Boston (St. 1909, c. 486, § 30, as amended by St. 1939, c. 156, § 1, and St. 1955, c. 60, § 2) requires that "Every officer or board in charge of a department in said city . . . when about to do any work or to make any purchase, the estimated cost of which alone, or in conjunction with other similar work or purchase which might properly be included in the same contract, amounts to or exceeds two thousand dollars, shall . . . invite proposals therefor by advertisements in the City Record." (This provision is largely drawn from St. 1890, c. 418, § 4.) Admittedly this requirement was not satisfied in the present case. The question we are asked to decide is whether the foregoing charter provisions of the city of Boston apply to contracts for repair of buildings made by the police commissioner. In other words, is the police commissioner an "officer . . . in charge of a department in said city"?

The commissioner argues that there is no authority for "trenching in any way upon the complete independence of the police commissioner from the mayor and from the formal requirements of the charter." However, it is difficult to see in what way the commissioner's authority is circumscribed. Cf. *School Comm. of Gloucester* v. *Gloucester,*

324 Mass. 209; *Richard D. Kimball Co.* v. *Medford,* 340 Mass. 727. All that is required by § 30 is that the commissioner invite bids by advertisements in the City Record. There is not even a requirement that the contract be awarded to the lowest responsible bidder. See *Deary* v. *Dudley, ante,* 192, 193–194. The purpose of the competitive bidding requirement of § 30 was well stated in *Morse* v. *Boston,* 253 Mass. 247, 252: ''The manifest purpose . . . is to put a limitation upon the wide power which otherwise officers of the city would possess to make binding contracts with reference to city work. All contracts made by or in behalf of Boston must conform to the requirements of the statutes. The design of the Legislature in enacting these provisions was to establish genuine and open competition after due public advertisement in the letting of contracts for city work, to prevent favoritism in awarding such contracts and to secure honest methods of letting contracts in the public interests. The main aim was to protect the public. Full publicity is provided as a means to that end. . . . This purpose is made more clear by reference to earlier statutes. . . . Critical comparison of these successive enactments discloses a progressive legislative intent to narrow the otherwise unlimited power of city officers to the end that city contracts shall be free, open and honest. The statutes must be interpreted, if reasonably possible, so as to effectuate the purpose of the framers.''

It would be anomalous if the protection afforded by § 30 was not applicable to police department contracts which undoubtedly involve expenditures that are substantial. It is not sufficient to state that the police commissioner is a State officer. See *Trustees of Pub. Library of Boston* v. *Rector of Trinity Church of Boston,* 263 Mass. 173, 179; *Commonwealth* v. *Dowe,* 315 Mass. 217, 222–223. It is to be noted that other city charter provisions (§§ 5, 9, and 14) are expressly stated not to apply to ''officials appointed by the governor.'' The fact that § 30 contains no such provision is not without significance. Further, § 31, also using the word ''department,'' has been construed to apply to the

police department. *Police Commr. of Boston* v. *Boston,* 239 Mass. 401, 407–408. *Trustees of Pub. Library of Boston* v. *Rector of Trinity Church of Boston,* 263 Mass. 173, 179–180.

It is argued by the commissioner that if § 30 applies to the police commissioner, then §§ 5 and 6 of St. 1890, c. 418 (requiring a suitable bond, a written contract, and approval of the mayor) must also apply. Even if this contention is accepted, it does not follow that the result is incompatible with the conclusion here reached. But the applicability of §§ 5 and 6 is not before us and it will be time enough to consider that question when it is presented.

The final decree is to be affirmed with a slight modification in paragraph (a). There it is stated that the authority of the commissioner to incur obligations binding on the city is "subject to the provisions of St. 1909, c. 486." Since only § 30 was involved, there should be added after "c. 486" the following: "§ 30." As so modified, the final decree is affirmed.

*So ordered.*