P.J. Spillane Co., Inc. *vs.* City of New Bedford.

Bristol. April 8, 1983. — April 27, 1983.

Present: Grant, Kaplan, & Warner, JJ.

*Public Works. Contract,* Public works. *Words,* "Unforeseen circumstances."

Inability by the selected subbidder on a contract for public work to secure payment and performance bonds as required by the general bidder's bonding company was not an unforeseen circumstance within the meaning of G. L. c. 149, § 44B (2), and thus the general bidder on refusing to sign the contract was not entitled to a return of its bid deposit. [709-710]

Civil action commenced in the Superior Court Department on June 24, 1980.

The case was heard by *Byron,* J.

*Robert L. Surprenant* for the defendant.

*Joseph T. Travaline* for the plaintiff.

Grant, J. The action is one by which the low general bidder on a contract for public work who refused to sign the contract seeks to recover its bid deposit under the "unforeseen circumstances" proviso of G. L. c. 149, § 44B(2), as amended through St. 1961, c. 604, § 1.[1] The city has appealed from an adverse judgment entered against it in the Superior Court following a trial without jury.

The basic facts are not in dispute. Counsel stipulated that "[t]he nature of the work under the proposed contract con-

---

[1] "and provided further that, in case of death, disability, bona fide clerical or mechanical error of a substantial nature, or other unforeseen circumstances affecting the general bidder, his bid deposit shall be returned to him." The cognate proviso of G. L. c. 149, § 44B(3), as amended through St. 1961, c. 604, § 2, which was concerned with the bid deposits of subbidders, was identical to the above except for the substitution of the words "any such sub-bidder" and the words "general bidder." See now G. L. c. 149, § 44B(3) and (4), as appearing in St. 1980, c. 579, § 55.

sisted essentially of supplying all necessary labor, equipment and materials to perform the complete move of the Andrew Robeson house from one location to another in the [c]ity of New Bedford."[2] The plaintiff's president (Spillane) was interested in submitting a bid as the general contractor and in employing one Merry to do the work involved in actually moving the building, which was one of historic interest. The bonding company habitually employed by the plaintiff had advised Spillane that it would not provide the plaintiff with the necessary payment and performance bonds unless the plaintiff could secure like bonds from whomever it might employ as the moving subcontractor. Spillane met with Merry in the middle of June, 1977, and obtained a price from him, as well as his assurance that he could secure the desired payment and performance bonds.

Acting on that price and assurance, Spillane, on the last day for the submission of bids (June 24, 1977), submitted a bid for the job of general contractor, together with a bid deposit of $7,500. The plaintiff was the low bidder, and the city awarded the contract to it. It was discovered that Merry was unable to secure either a payment or a performance bond and that that problem had existed at the time the plaintiff had submitted its bid.[3] The plaintiff could not find another subcontractor to do the work and was forced by the strictures which had been placed on it by its own bonding

[2] There is some question whether the contract was one for the "construction, reconstruction, alteration, remodeling, repair, or demolition of any building" within the meaning of G. L. c. 149, § 44A, as amended through St. 1967, c. 535, § 1. See *Deary* v. *Dudley*, 343 Mass. 192, 194 (1961); *Gil-Bern Constr. Co.* v. *Brockton*, 353 Mass. 503, 504, 505 (1968); *Commissioner of Labor & Indus.* v. *Lawrence Housing Authy.*, 358 Mass. 202, 204, 206-207, 210 (1970); *Sears, Roebuck & Co.* v. *School Comm. of Burlington*, 3 Mass. App. Ct. 399, 401-402 (1975); *Mari & Sons Flooring Co.* v. *Southeastern Mass. Univ. Bldg. Authy.*, 3 Mass. App. Ct. 580, 584 (1975). We pass the question because counsel stipulated that the proposed work was subject to the provisions of G. L. c. 149, §§ 44A-44L, and the judge proceeded accordingly. Compare *Police Commr. of Boston* v. *Boston*, 343 Mass. 480, 482 (1962).

[3] The only evidence on this point which was admitted for the truth of the matter was the following sequence in the direct examination of Merry:

company to refuse to sign the contract tendered by the city. As the next lowest general bid was more than $7,500 higher than the plaintiff's bid, the city declared the plaintiff's entire bid deposit forfeit. The judge ruled that Merry's inability to secure the bonds required by the plaintiff's bonding company was "an unforseen circumstance affecting the general bidder (the plaintiff) which requires that the bid deposit be returned to it."

We think that ruling overlooked the only relevant case on the proper interpretation of the words "unforeseen circumstances" as used in G. L. c. 149, § 44B. In *Lincoln-Sudbury Regional Sch. Dist.* v. *Brandt-Jordan Corp.*, 356 Mass. 114 (1969), which involved a claim of "unforeseen circumstance" by a subbidder under § 44B(3), the court said (at 118): "It seems to us that prior to the 1961 amendment [see note 1, *supra*] the term [unforeseen circumstances] was clearly intended to be limited to circumstances such as death or disability which occur *after the bid had been submitted*" (emphasis supplied). The only change of any present significance in § 44B(2) and (3), as appearing in St. 1956, c. 679, § 1, which was effected by St. 1961, c. 604, §§ 1 and 2 (note 1, *supra*), was the substitution of "shall" for "may" in the clause "his bid deposit may be returned to him." It follows that there is no occasion to inquire whether a "circumstance" is "unforeseen" unless the circumstance is one which arises after a bid has been submitted. As the circumstance relied on in this case (Merry's inability to secure the necessary bonds) existed at the time the plaintiff submitted its bid (see note 3, *supra*), the judge's ruling was in error.

The judgment is reversed, and a new judgment is to be entered which dismisses the action.

*So ordered.*

"Q. Could you have obtained a bond on June 24th, 1977, for moving this Robeson House? A. No." Merry's insurance agent later explained to Spillane that Merry "didn't have the paperwork, the accounting paperwork required to go to a bonding company and get a bond."