COUNTY COMMISSIONERS OF BRISTOL, petitioners.

Bristol.    October 23, 24, 1906. — November 27, 1906.

Present : KNOWLTON, C. J., MORTON, HAMMOND, BRALEY, & RUGG, JJ.

*Acushnet River Bridge.    Bridge.    County Commissioners.    Bristol County. Old Colony Railroad Company.    Constitutional Law.    Statute,* Construction. *Interest.    Jurisdiction.*

By § 6 of St. 1900, c. 439, relating to the relocation and completion of the bridge over the Acushnet River between the city of New Bedford and the town of Fairhaven, providing that the $220,000 of the cost of the completion of the bridge under that statute apportioned upon the county of Bristol should be apportioned by the commissioners appointed under St. 1893, c. 368, § 6, "between the cities and towns in the county of Bristol, as provided in said section six," the apportionment is directed to be made among the cities and towns in that county " which are or will be specially benefited " without apportioning any part of the cost to the county of Bristol itself.

The provision of St. 1900, c. 439, § 6, apportioning thirty-three per cent of the excess over $220,000 of the cost of the completion of the bridge over the Acushnet River between the city of New Bedford and the town of Fairhaven, which carried it over the railroad of the Old Colony Railroad Company instead of crossing it at grade, upon that company to an amount not exceeding $90,000, is constitutional and valid.

St. 1906, c. 238, authorized the commissioners, appointed under a previous statute to apportion the cost of the bridge over the Acushnet River between the city of New Bedford and the town of Fairhaven, to report their apportionment to the Superior Court so far as such cost had been determined and paid, although certain items of cost remained unascertained and unpaid, and to provide for the apportionment of such part of the cost as had not been ascertained or paid at the date of the report by declaring in what percentages such cost should thereafter be apportioned when it should have been ascertained and paid.  *Held,* that, the statute being silent in regard to the manner in which this future apportionment should be made, the proper construction was that it should be made as it would have been if the cost already had been determined and paid at the date of the commissioners' report, that is, under the provisions of St. 1900, c. 439, § 6, the only purpose of the Legislature being to permit the direction of the apportionment before the ascertainment of the amount.

St. 1893, c. 368, amended by subsequent acts, providing for the appointment of a board of three commissioners to apportion the cost of the bridge over the Acushnet River between the city of New Bedford and the town of Fairhaven, made no provision for the payment of interest upon the amounts payable under the report of the commissioners to the Superior Court from the time of the filing of the report until the entry of judgment. *Held,* that R. L. c. 177, § 8, had no application, and that no interest before judgment could be charged.

The commissioners appointed under St. 1893, c. 368, § 6, to apportion the cost of the bridge over the Acushnet River between the city of New Bedford and the town of Fairhaven were authorized by that section and by St. 1900, c. 439, § 7, to determine and name the cities and towns by which the expense of the care, maintenance and repairs of the bridge and draw with the approaches, abutments and piers should be paid, and also to determine and name the proportion of such expense that should be paid by each of such cities and towns. *Held,* that the determination of the commissioners in regard to the maintenance and support of the bridge was not subject to revision.

KNOWLTON, C. J.   This is a petition by the county commissioners of the county of Bristol for the appointment of commissioners to apportion the cost of the construction of a bridge across Acushnet River, between the city of New Bedford and the town of Fairhaven, and the expense of the care and maintenance of this bridge, among the parties liable therefor.   The statutes under which the bridge was built are Sts. 1893, c. 368; 1894, cc. 239, 530; 1897, c. 200; 1898, c. 387; 1899, c. 460; 1900, c. 439.   A report of the joint board of railroad commissioners and harbor and land commissioners to the Legislature under c. 99 of the Resolves of 1899 was also considered in connection with the statutes.   Commissioners were appointed who heard the parties and made a report which was accepted and affirmed by the Superior Court.   Judgment was ordered thereon, and certain questions of law were then reported to this court.

The most important of these questions is whether, under the St. 1900, c. 439, § 6, the $220,000 which is to be apportioned upon the county of Bristol and then "to be apportioned by said commissioners between the cities and towns in the county of Bristol, as provided in said section six," that is, as provided in § 6 of St. 1893, c. 368, is all to be apportioned among the "towns and cities in said county . . . which are or will be specially benefited," or is to be apportioned among said towns and cities and the county of Bristol.   The apportionment of the cost that accrued under the St. 1893, c. 368, was to be made among the county of Bristol and the cities and towns in the county of

Plymouth and in the county of Bristol that should be found to be specially benefited. By St. 1899, c. 460, a limitation was put upon the liability of towns and cities in the county of Plymouth. It was then found that a very much larger sum had been expended than the cost as originally estimated, and that a great deal more was needed to complete the bridge. The original plan was for a bridge which would leave the crossing of the railroad on the New Bedford side at grade, but it was then thought important to abolish this grade crossing. Accordingly work was stopped under the legislative resolve of 1899, c. 99, and the board of railroad commissioners and the board of harbor and land commissioners were constituted a joint board to consider the matter and to report to the next General Court various specified facts important in determining what should be done. After consideration of the report made under this resolve, the St. of 1900, c. 439, was passed, which adopted a new plan for future action. The completion of the bridge was taken out of the hands of the county commissioners and entrusted to the city of New Bedford, to be carried out according to plans, specifications and requirements to be furnished by the joint board above mentioned, following the report previously made to the Legislature. This report recommended the abolition of the grade crossing and the construction of the bridge overhead at an expense greatly exceeding that of the grade crossing. The scheme relative to the payment of the cost of that part of the bridge remaining to be built was entirely changed. The apportionment was to be "upon the county of Bristol, two hundred and twenty thousand dollars, to be apportioned by said commissioners between the cities and towns in the county of Bristol, as provided in said section six" of the former statute, and certain percentages were put upon the Commonwealth of Massachusetts, upon the Old Colony Railroad Company, upon the Union Street Railway Company, and upon the town of Fairhaven, and the city of New Bedford was required to pay the balance. By the terms of the former statute the county was to share the expense incurred under it with the cities and towns specially benefited. That expense, as ascertained and reported in the year 1899, was more than $800,000. It was evidently the purpose of the Legislature to leave the expense of the new

construction to be paid entirely by the parties specially bene-fited, on the ground that the part of $800,000 which would ultimately rest as a burden upon the taxpayers of the county, including inhabitants of cities and towns that would not be specially benefited, was as much as ought to be paid by them. So we have the provision putting $220,000 upon the county and then requiring it to be apportioned "between the cities and towns in the county of Bristol." In this last apportionment the county is left out, and the words, "as provided in said section six," have no other meaning than to incorporate the require-ment of that section that the apportionment shall include only such cities and towns as are specially benefited. We are of opinion that the ruling of the commissioners and the court upon this part of the statute was correct.

The Old Colony Railroad Company raises a question as to the thirty-three per cent of the balance above the $220,000 which the statute requires it to pay. We do not exactly under-stand the objection. It is not argued that the statute is uncon-stitutional. It provided for a very important change in the public travel at the crossing, which is beneficial to the corpora-tion as well as to the public. The public travel is now carried over the railroad instead of crossing it at grade. Whether the public crossing at grade is technically abolished or not in view of the fact that there are two abutters on the old way between the railroad and the river, there is no doubt of the constitutional authority of the Legislature to impose a part of the expense of this change upon the railroad company. *Norwood* v. *New York & New England Railroad*, 161 Mass. 259. The ruling on this point was correct.

The petition for the appointment of commissioners to appor-tion the cost was filed on July 8, 1904. After hearings at length before the commissioners, it was found that the apportionment could not be completed because a part of the cost had not been ascertained, owing to the pendency of suits for the determina-tion of damages to land. Thereupon the St. 1906, c. 238, was passed, providing for an apportionment of such cost as had been determined and paid, and "for the apportionment of such part of the cost as has not been ascertained or paid at the date of its report by declaring in what percentages such cost shall

hereafter be apportioned when it has been ascertained and paid." This statute is silent in regard to the manner in which this last apportionment shall be made, and the question arises whether it changes the provisions by which the commissioners would have been governed if this cost had been determined previously. There is nothing to indicate an intention of the Legislature to make such a change. There was no change unless by the failure to state expressly in the second section, by what principles the commissioners should be governed in making the apportionment, the statute left them to adopt any method that they should deem best. If this failure to say anything on the subject repealed the provisions of the law applicable to the apportionment of this cost had it been determined previously, the commissioners might put a large part of it upon the county of Bristol, or distribute it in any way in which the Legislature may distribute such expenses. We do not think this is the true meaning of the statute. The natural construction of it is that the apportionment should be made as it would have been if the cost had been determined and paid, the only purpose of the Legislature being to permit the apportionment before the ascertainment of the amount.

There is no doubt that this cost, if it had been determined previously, would have been a part of that to be paid under the St. 1900, c. 439, § 6, in the proportions of twelve per cent by the Commonwealth, thirty-three per cent by the Old Colony Railroad Company, ten per cent by the Union Street Railway Company, five per cent by the town of Fairhaven, and forty per cent by the city of New Bedford, subject to a limitation of the aggregate amount payable by these parties, respectively, except the last, and to a possible increase upon the city of New Bedford by reason of this limitation. We are of opinion that the apportionment should be modified so as to make the percentages conform to this part of the statute.

A single question remains as to interest upon the amounts payable to the county of Bristol for the time from the filing of the report to the time of the entry of judgment. This question arises under the St. 1893, c. 368. This statute makes no provision for a payment of interest during this period. It is not contended that interest can be allowed as damages on the ground

that the money is wrongly detained after it becomes payable, for it cannot be paid until after the judgment is entered. It is not within the language of R. L. c. 177, § 8, which relates only to awards of county commissioners, committees or referees, or reports of auditors or masters in chancery, or verdicts of juries. This statute was in force at the time of the decision in *Needham* v. *Wellesley*, 139 Mass. 372, 376, which in this particular is almost identical with the present case, and which holds that such interest cannot be charged. See also *Hendrick* v. *West Springfield*, 107 Mass. 541 ; *Bowers* v. *Hammond*, 139 Mass. 360. The allowance of this interest was erroneous.

The determination of the commissioners in regard to the maintenance and support* of the bridge cannot be revised in this court.

---

\* The commissioners were Hon. James R. Dunbar, Hon. Frederic Dodge and Hon. Dana Malone. They were appointed under § 6 of St. 1893, c. 368, which provides among other things, as follows : " Said commissioners named in this section shall also determine and name the cities and towns by which the expense of the care, maintenance and repairs of said highway bridge, draw, including approaches, abutments and piers, shall be paid, and also determine and name the proportion of said expense that shall be paid by each of such cities and towns."

Section 7 of St. 1900, c. 439, is as follows :

" Section 7. Said commissioners shall determine and name the proportion of the expense of the care, maintenance and repairs of that part of said bridge and of the approaches thereto constructed under this act, that shall be paid by such cities and towns in the county of Bristol, as said commissioners shall designate, in the manner provided in said section six of said chapter three hundred and sixty-eight. The Old Colony Railroad Company shall maintain and keep in repair the framework of that part of said bridge constructed over its location, together with all abutments, piers and supports for the same within said location, and the surface thereof and its approaches shall be maintained and kept in repair by the city of New Bedford, in accordance with the provisions of section six of chapter four hundred and twenty-eight of the acts of the year eighteen hundred and ninety."

The report of the commissioners contained the following decision under these provisions :

" We determine that the expense of the care, maintenance and repairs of said highway, bridge, draw, including approaches, abutments and piers, constructed under the provisions of said chapter 368 [of St. 1893] shall be paid by the city of New Bedford and the town of Fairhaven, and in the proportion of twenty per cent by Fairhaven and eighty per cent by New Bedford; and that the expense of the care, maintenance and repair of that part of said bridge and of the approaches thereto constructed under said chapter 439

The report is to be modified as to the apportionment of the cost not yet determined, and the interest referred to is to be disallowed.

*So ordered.*

*F. S. Hall,* (*J. M. Swift* with him,) for the county of Bristol.

*W. B. Perry,* for the city of New Bedford.

*C. W. Clifford,* for the town of Fairhaven.

*H. A. Dubuque,* for the city of Fall River.

*O. Prescott, Jr.,* for the Union Street Railway Company, submitted a brief.

*J. H. Benton, Jr.,* for the Old Colony Railroad Company, submitted a brief.

*W. C. Parker,* for the town of Dartmouth, submitted a brief.

*W. B. Perry, L. W. Jenney & G. H. Potter,* for the town of Acushnet, submitted a brief.

---

[of St. 1900], shall be paid by the city of New Bedford and the town of Fairhaven in the proportion of twenty per cent by said town and eighty.per cent by said city, except that the Old Colony Railroad Co. shall maintain and keep in repair the framework of that part of said bridge constructed over its location, together with all abutments, piers and supports for the same within said location, and the surface thereof and its approaches shall be maintained and kept in repair by the city of New Bedford as provided in section 7 of said chapter 439 [of St. 1900], and excepting also that the expense of the care, maintenance and repair of so much of the approaches of said bridge as were constructed under the provisions of section 10 of said chapter 439 shall be entirely paid by the city of New Bedford."

The town of Fairhaven contended that the distribution of the gross cost of maintenance between New Bedford and Fairhaven at twenty per cent to Fairhaven and eighty per cent to New Bedford was not just and equitable.