HENRY A. WOOD & others *vs.* INHABITANTS OF MILTON.

Norfolk.    December 10, 1907. — February 28, 1908.

Present: KNOWLTON, C. J., HAMMOND, LORING, BRALEY, & RUGG, JJ.

*Municipal Corporations,* Officers and agents, Town meeting.    *Way,* Public, Layout
and acceptance.    *Words,* " To indefinitely postpone."

Discussion by RUGG, J., of the character of town meetings.

Although in general the action of town meetings conforms to parliamentary pro-
cedure, it never has been held that they are governed by the strict rules of
legislative practice.

A vote of a town at a town meeting " To indefinitely postpone " action on an article
in the warrant calling the meeting is the equivalent of complete disapproval
of the action proposed in the article.

Where the question whether a town " will vote to accept " a street " as laid out by
the selectmen " is properly before a town meeting which votes " To indefinitely
postpone," such vote is a final rejection of the layout and,.there having been
no further action by the selectmen meanwhile, if a town meeting held a year
later, the warrant for which contains an article identical with that of the pre-
vious meeting, votes " to accept " the street " as laid out by the selectmen," the
action of the second meeting is invalid.

PETITION, filed in the Land Court January 16, 1906, for reg-
istration of the title to certain land in Milton bounding in part
on Lincoln Street, which the petitioners alleged to be a private
way, the use and benefit of the whole of which, in common with
other adjoining owners, belonged to them.    The respondent con-
tended that Lincoln Street was a highway duly laid out by the
selectmen and accepted by vote of the town.

There was a hearing before *Davis,* J.    There was no question
but that Lincoln Street was a private way unless it had been
properly laid out and accepted as a street by the town.    The
presiding judge filed a memorandum containing the following
findings of fact: " The selectmen had a hearing on the matter
of laying out Lincoln Street on February 16, 1900, and on
February 23, 1900, voted to lay out Lincoln Street in accordance
with " a certain plan.    " The warrant for the town meeting of
March 5, 1900, contained, as article 52, the following: ' To see
if the town will vote to accept Lincoln Street as laid out by the
selectmen under the acts authorizing the assessment of better-
ments, and appropriate money for the same.'    At that meeting
it was voted, in regard to article 52, ' To indefinitely postpone.'

The warrant for the town meeting of March 4, 1901, contained, as article 35, the same language as article 52 of the warrant for the meeting of 1900, and the meeting voted ' To accept Lincoln Street as laid out by the selectmen under the act authorizing the assessment of betterments, and that the sum of nine hundred dollars be appropriated therefor.' No further or other layout was made by the selectmen than that of February 23, 1900." The presiding judge accordingly ruled : " That the vote of the town in 1900 to indefinitely postpone action on the layout by the selectmen was a final action by the town on the layout, and that the attempted acceptance by the town at the meeting of 1901 was therefore invalid," and ordered a decree for the petitioners, determining Lincoln Street to be a private way ; and the respondent alleged exceptions.

*A. R. Tisdale*, for the respondent.

*C. F. Hall*, for the petitioners.

RUGG, J. The single question presented is whether, after it has been voted at a town meeting to postpone indefinitely an article in the warrant to see whether the town will accept a street as laid out by the selectmen, the town can, at a subsequent meeting called upon a new warrant containing an appropriate article, vote to accept the same street as originally laid out, without further or renewed action by the selectmen touching the subject. Primarily it is necessary to ascertain the meaning of the vote to indefinitely postpone the acceptance of the street. It is of assistance in interpreting language to consider the nature of the body or person by whom it is used. A town meeting is a single gathering of the voters of a town, called for the purpose of considering only those subjects distinctly set forth in the warrant by which the citizens are summoned. Such a meeting, although commonly consisting of but a single session, may be adjourned from time to time in order to finish its business. It is not self-perpetuating nor is it a legislative body with fixed sessions. It passes out of existence with the performance of the particular duties which called it into being. Its dissolution without affirmative action as to any of the matters properly before it is ordinarily equivalent to their rejection. The meeting, once dissolved, never can be brought into being again. Other business of the town can be transacted only at a new meeting, called

upon another warrant, which will set forth only the subjects it can pass upon. It is not a representative body, but a pure democracy, where the citizens, as to matters within their jurisdiction, administer the affairs of the town in person. It exercises both legislative and executive functions. The freest discussion prevails, yet in some respects its proceedings are inherently somewhat summary. The technical rules of parliamentary law, designed for the regulation of deliberative assemblies, are in some respects ill adapted for the transaction of the affairs of a town meeting. Hence, although in general the action of town meetings conforms to parliamentary procedure, it never has been held that they are governed by the strict rules of legislative practice. *Hunneman* v. *Grafton*, 10 Met. 454. The ample powers possessed by moderators, recognized from earliest times and growing out of the imperative needs of the office, are inconsistent with many incidents of ordinary parliamentary law. When a meeting of such powers, limitations and general characteristics votes, as to any of its articles, indefinite postponement, this action of necessity means that the meeting is opposed to the proposition presented. Indefinite postponement by a body having only definite present existence is generally, though not universally (*Revere Water Co.* v. *Winthrop*, 192 Mass. 455) the equivalent of complete disapproval. This conclusion is confirmed by the technical meaning which the phrase has acquired in parliamentary usage. There is a consensus of opinion among writers upon this subject that it means suppression of the question, and is equivalent to a negative vote. Cushing, Law and Practice of Legislative Assemblies, § 1386. Crocker, Parliamentary Procedure, § 36. Jefferson, Manual of Parliamentary Practice, Sect. XXXIII. 2. Reed, Parliamentary Rules, §§ 121, 122. It follows that the vote of the town, when the acceptance of the street was first before it, was a rejection of the action of the selectmen in laying it out.

It remains to inquire whether, under these circumstances, the town can act a second time upon the subject without a new layout by the selectmen. The statute governing this laying out of a town way is Pub. Sts. c. 49, §§ 65, 67–71, inclusive. R. L. c. 48, §§ 65, 67–71, inclusive. The procedure marked out requires an adjudication by the selectmen or road commissioners,

acting not as agents of the municipality, but as public officers, in the exercise of an independent, untrammelled and sound judgment, that the public necessity and convenience require the way. This adjudication can be made only after a notice and a hearing, or an opportunity for hearing, has been given to the owners of all land over which the way extends. It becomes a part of the duty of the public board, if it decides that the public interest demands the laying out of the way, to determine the amount of compensation to be paid for each parcel of land included within the boundaries of the way, and to report this award as a part of the laying out, which must be filed in the office of the town clerk seven days at least before the town meeting called for the purpose of acting upon it. None of these steps are idle formalities, but they are all requirements of substance, framed as essential and indispensable prerequisites to the appropriation of private property to this public use. *Blaisdell* v. *Winthrop*, 118 Mass. 138. The scheme provides for a hearing before and a decision by the board of public officers, and a determination, after opportunity for full discussion, by all the voters of the town deliberating in lawful meeting. These various requirements are links in a single chain; if any one is broken or unsound the whole is worthless. The final action is by the town meeting. If its seal of acceptance is placed upon the previous action, a way springs into existence; if it is refused, the whole matter fails. A due regard to the rights of the landowner demands that this course of procedure should go forward with reasonable continuity from the beginning to the end. He ought not to be hampered in the improvement of his estate by long continued procrastination and vacillation on the part of the public in deciding whether he shall be left undisturbed or a part of his property appropriated by eminent domain. Precipitate action is not required, and due consideration and discussion according to the traditions of the town meeting are desirable and provided for. But, once the matter is fairly before the town, acceptance must follow, which will appear by affirmative vote at the town meeting (or a regular adjournment thereof) at which it is first presented, or rejection is implied. The requirement for assessment of damage to the landowner leads to the same conclusion. Such determination of damages can be made only

as of the time when the act is done.   It serves the twofold purpose of giving to the voters before the town meeting an estimate of one element of the expense of the proposed improvement, and to the landowner the judgment of an impartial tribunal as to his pecuniary damages.   But both these purposes, in many localities of changing values of real estate, might be frustrated, if action might be taken by the town meeting after the lapse of years.

The result is that the public way laid out over the land in question was not legally accepted.

*Exceptions overruled.*