COMMONWEALTH *vs.* TOWN OF HUDSON & others.

Suffolk.    November 4, 1943. — December 29, 1943.

Present: FIELD, C.J., LUMMUS, QUA, COX, & RONAN, JJ.

*Water. Public Health. Municipal Corporations*, Water Supply, Relation to Commonwealth, Judicial power over municipality, Officers and agents, Voters. *Constitutional Law*, Police power, Public health, Delegation of powers, Political subdivisions. *Contempt. Jurisdiction*, Over municipality. *Equity Jurisdiction*, Municipality, Public health, Contempt. *Equity Pleading and Practice*, Appearance, Parties, Contempt proceeding, Decree.

A town, named as defendant in the bill in a suit in equity brought against it and certain of its officers, was before the court for entry of final decree where the town counsel purported to sign its name to the answer of some of the officers in addition to their names, followed by the words "by their attorney" and his signature as "town counsel," and later filed in this court a brief "for the respondents," signed by him as "town counsel," which contained nothing to show that it was not filed for the town as well as for the other defendants.

An order by the department of public health in 1942 to a town maintaining a water system supplied with good, untreated drinking water from a pond, "to provide" forthwith "treatment equipment for chlorinating all water supplied to the town during the existence of the present state of war," such order being based on the danger of pollution of the supply by sabotage, was within the authority conferred upon the department by St. 1942, c. 8.

St. 1942, c. 8, so far as it authorized the department of public health to order a town to provide, at the town's expense, equipment for chlorinating all water supplied through the town's water system "during the existence of the present state of war" in order to guard against the danger of pollution by sabotage, was a constitutional exercise of the police power in the interest of the public health.

Delegation by the Legislature, by St. 1942, c. 8, to the department of public health of the power to select, without a hearing, the water systems requiring the equipment specified in the statute was not unconstitutional.

A town is merely a creature of the Commonwealth, from which its existence and all its powers and those of its voters and officers are derived.

A town is fully subject to the judicial power; and there was no merit in a contention that a decree in equity ordering a town to take certain action involving expense to it would be futile and unenforceable and therefore should not be entered because the power of appropriating the town's money was exclusively in the voters at town meeting, who might refuse an appropriation to defray such expense.

Statement by LUMMUS, J., as to contempt proceedings and other means available to a court of equity to enforce a decree ordering a town to perform affirmative acts.

In a suit in equity against a town and some of its officers to enforce an order by the department of public health under St. 1942, c. 8, requiring the town to provide chlorinating equipment for its water supply, this court, holding the order valid, ordered the entry of a final decree, sufficient for the time being on the assumption that it would be obeyed, commanding the town, and all its officers, agents, servants and attorneys whose action might be required for obedience to the decree, to provide such equipment forthwith at the expense of the town and commanding the selectmen of the town forthwith to cause a town meeting to be held on a warrant suitable for action by the voters so to provide the equipment.

BILL IN EQUITY, filed in the Superior Court on October 7, 1942.

The suit was reserved by *Cabot*, J., for determination by this court upon the pleadings and a statement of agreed facts.

*M. A. Westgate*, Assistant Attorney General, for the Commonwealth.

*A. G. Bonazzoli*, Town Counsel, for the defendants.

LUMMUS, J. The town of Hudson, a manufacturing and residential town with a population exceeding eight thousand, maintains a system of water supply for its inhabitants, under the charge of three commissioners of public works. St. 1883, c. 149. St. 1909, c. 48. On January 31, 1942, at a special session of the General Court, a law was enacted for the declared purpose of protecting the public health during the existing state of war. St. 1942, c. 8. It read as follows: "If the department of public health determines that, during the existence of the present state of war, it is necessary for a city, town, district or water company maintaining a water supply to provide equipment for such supply, including treatment equipment, or additions to existing equipment, for the protection of the public health, said department may order such city, town, district or company to provide such equipment or to make such additions to any existing equipment. The supreme judicial or the superior court shall have jurisdiction in equity to enforce any such order."

The department of public health, which consists of a commissioner of public health and a public health council of seven persons (G. L. [Ter. Ed.] c. 17, § 1, § 3 as appearing in St. 1939, c. 233, § 1), sent a notice to the defendant town, dated April 10, 1942, signed "By order of the department of public health. Paul J. Jakmauh, M. D. Commissioner of Public Health," stating that "the department hereby determines that it is necessary for the town of Hudson to provide treatment equipment for chlorinating all water supplied to the town during the existence of the present state of war," and under the authority of the statute already quoted ordering "the town of Hudson to provide such chlorinating equipment forthwith." It is agreed that that notice constituted an order of the department of public health. See *Commonwealth* v. *St. John*, 261 Mass. 510, 521, 522.

On December 10, 1941, and on December 12, 1941, the department of public health had recommended to the commissioners of public works of Hudson that the water supply be guarded against sabotage, and that the water be chlorinated. At the annual town meeting held on March 2, 1942, it was voted to postpone indefinitely action on two articles in the warrant to provide for chlorinating the town water, and to appropriate money for that purpose. Thereby those articles were rejected. *Wood* v. *Milton*, 197 Mass. 531, 533. After receiving on April 16, 1942, the order of the department of public health dated April 10, 1942, the commissioners of public works and the selectmen caused an article to be inserted in the warrant for a special town meeting as follows: "To see if the town will vote to authorize the commissioners of public works to install chlorinating equipment for the town's water supply as ordered by the State department of public health, or do or act anything thereon." At the special town meeting, held on April 29, 1942, it was voted "not to authorize the commissioners of public works to install chlorinating equipment for the town's water supply as ordered by the State department of public health."

On October 7, 1942, the Commonwealth, by the Attorney General, brought this bill against the town, its commis-

sioners of public works, and its selectmen, praying that they "be ordered forthwith to provide treatment equipment for chlorinating the water supplied to the town of Hudson, as ordered by the department of public health of the Commonwealth of Massachusetts." The individual defendants appeared and answered. The town did not appear nor answer except that the town counsel signed the name of the town to the answer of the commissioners of public works, to which he signed their names also, in each case "by their attorney," signing his name as "town counsel." A brief was filed in this court "for the respondents," signed by the "town counsel," which contained nothing to indicate that it was not filed on behalf of the town as well as the individual defendants. One point made was that no decree could be entered which would be enforceable against "the respondent inhabitants of the town of Hudson." We think that the town is a party defendant before this court. Compare *Faulkner* v. *Lowell Trust Co.* 285 Mass. 375, 377.

There was agreement as to the material facts. The water supply of Hudson comes from a well isolated pond called Gates Pond situated in a wooded section of the town of Berlin. From that pond water flows by gravity into the water system. The town of Hudson owns all the watershed of the pond except for a frontage of five hundred feet. There is only one house in the watershed, and that is sufficiently removed from the pond so as not to be a source of pollution. The water has never been chlorinated or otherwise treated, and the water department has no equipment for treating it. It satisfies both State and Federal standards for drinking water, and is rated as very good. Since the outbreak of the war the metered domestic consumption has decreased about twelve million gallons a year to about sixty-nine million gallons, while the metered industrial consumption has increased about forty-two millions gallons a year to about ninety million gallons. Several industrial plants in Hudson are engaged in producing goods needed for the war, and a large number of their employees live in the town. The pond is being guarded constantly by one armed guard and two dogs. The approved methods for

purifying water are filtration, the ozone process, the ultra-violet ray process and chlorination. The last is the least expensive, and equipment for it is most easily obtainable. It is expected that the Federal government will issue priorities enabling the town to procure such equipment. The Commonwealth has offered its aid. The determination made by the department of public health was based wholly upon the danger of pollution of the water supply by "sabotage," which, we understand, means as applied to this case intentionally destructive or harmful acts committed by enemy agents or sympathizers.

Upon these facts a judge of the Superior Court reserved the case for this court without decision. G. L. (Ter. Ed.) c. 214, § 31. Compare *National Development Co.* v. *Gray, ante,* 127.

The order of the department of public health, that the town "provide treatment equipment for chlorinating all water supplied to the town during the existence of the present state of war," was within the authority given to the department by the statute. It was not necessary to give the town an option to purify the water in some other way. The department had authority to specify even more particularly than it did the kind and amount of equipment to be provided. In the nature of things it is doubtless impossible to treat drinking water and leave untreated water to be used for industrial purposes. For all that appears water for both purposes flows through the same pipes.

The constitutional rights of the town as the owner and proprietor of a business of supplying water (G. L. [Ter. Ed.] c. 40, §§ 38, 41; c. 44, § 8 (3); St. 1938, c. 172; St. 1941, c. 465; St. 1883, c. 149; *Hand* v. *Brookline,* 126 Mass. 324; *Opinion of the Justices,* 150 Mass. 592, 596, 597; *Merrimack River Savings Bank* v. *Lowell,* 152 Mass. 556; *Pearl* v. *Revere,* 219 Mass. 604; *Horton* v. *North Attleborough,* 302 Mass. 137, 138; *Adie* v. *Mayor of Holyoke,* 303 Mass. 295, 300), cannot rise above those of a water company, privately owned, engaged in the same business. *Higginson* v. *Treasurer & School House Commissioners of Boston,* 212 Mass. 583, 585. *Opinion of the Justices,* 234 Mass. 612, 619. The pres-

ervation of the health and physical safety of the people is a purpose of prime importance in the exercise of the police power. *Opinion of the Justices,* 293 Mass. 589, 601. *Liggett Drug Co. Inc.* v. *License Commissioners of North Adams,* 296 Mass. 41. *McMurdo* v. *Getter,* 298 Mass. 363, 366. *Commonwealth* v. *Ferris,* 305 Mass. 233, 237. See also arts. 47 and 49 of the Amendments to the Constitution.

In sustaining a rule of the State board of health prohibiting fishing without a permit in waters used as a water supply, Rugg, C.J., said, "It requires no discussion to demonstrate that the preservation of the purity of the water supply for the domestic uses of the people is within the police power. The absolute prohibition of fishing upon such a source of supply could not be said to be unreasonable under the circumstances here disclosed." *Commonwealth* v. *Hyde,* 230 Mass. 6, 8. See also *Sprague* v. *Dorr,* 185 Mass. 10; *Loring* v. *Commissioner of Public Works of Boston,* 264 Mass. 460, 464; *Mechanics Savings Bank* v. *Collector of Taxes of Holyoke,* 299 Mass. 404, 410. The fact that in the present case the evil to be avoided is one feared rather than one presently existing is no reason for denying legislative authority to guard against it. *Commonwealth* v. *E. E. Wilson Co.* 241 Mass. 406, 410. *Train* v. *Boston Disinfecting Co.* 144 Mass. 523. *Commonwealth* v. *Pear,* 183 Mass. 242. And the fact that the chlorination of its water supply will cost the town money is not a constitutional objection to a legislative act requiring that precaution. "The principle is familiar that, within reasonable limits, the legislative department of government in mitigation of a public evil may place the cost on those in connection with whose business the evil arises." *Howes Brothers Co.* v. *Unemployment Compensation Commission,* 296 Mass. 275, 284, 285. For example, the disinfection of rags at the expense of the owner may be required. *Train* v. *Boston Disinfecting Co.* 144 Mass. 523. The installation of water closets in buildings may be required. *Commonwealth* v. *Roberts,* 155 Mass. 281. Accidents may be prevented by requiring the elimination of grade crossings at the expense of a railroad corporation. *Selectmen of Norwood* v. *New York & New England Railroad,* 161 Mass. 259,

264, 265. *County Commissioners of Bristol, petitioners*, 193 Mass. 257, 260. Many statutes have imposed financial burdens on public service corporations and on employers in the interest of the health and safety of the public or of employees.

The fact that the Legislature, instead of requiring chlorination by its own act, left the selection of the water systems requiring such treatment to the department of public health, does not give rise to any sound constitutional objection. It is true that the general power to legislate cannot be delegated. *Brodbine v. Revere*, 182 Mass. 598, 600. *Boston v. Chelsea*, 212 Mass. 127. *Opinion of the Justices*, 302 Mass. 605, 614. But one of the exceptions to or qualifications of that doctrine is that the Legislature may delegate to a board or an individual officer the working out of the details of a policy adopted by the Legislature. Perhaps the leading, though not the first, case is *Commonwealth v. Sisson*, 189 Mass. 247, where an order made by the fish and game commissioners, prohibiting the discharge of sawdust into a stream containing edible fish and ordering the defendant owners of a sawmill to erect a blower or to take other means approved by the commissioners to prevent such discharge, was held valid, although the commissioners had refused the owners a hearing. The court said that the order was neither a general regulation nor a judicial act. The "action of the board in the case at bar was the working out of details under a legislative act. The board is no more required to act on sworn evidence than is the Legislature itself, and no more than in case of the Legislature itself is it bound to act only after a hearing or to give a hearing . . . ; and its action is final, as is the action of the Legislature in enacting a statute. And being legislative, it is plain that the questions of fact passed upon by the commissioners in adopting the provisions enacted by them cannot be tried over by the court." Page 252. This view of the nature and validity of the order in question is supported by other decisions of this court. *Opinion of the Justices*, 138 Mass. 601, 603–604. *Lynn v. County Commissioners of Essex*, 148 Mass. 148. *Kingman, petitioner*, 153 Mass. 566, 576, et seq. *Brodbine v. Revere*, 182 Mass. 598, 601, et seq. *Nelson*

v. *State Board of Health,* 186 Mass. 330. *Welch* v. *Swasey,* 193 Mass. 364, 375. *Commonwealth* v. *Kingsbury,* 199 Mass. 542, 546. *Codman* v. *Crocker,* 203 Mass. 146, 154, 155. *Lyman* v. *Commissioners on Fisheries & Game,* 211 Mass. 10. *Commonwealth* v. *Fox,* 218 Mass. 498, 500. *Commonwealth* v. *Feeney,* 221 Mass. 323. *Commonwealth* v. *Hyde,* 230 Mass. 6 (rule of State board of health prohibiting fishing in a water supply without a permit). *Donham* v. *Public Service Commissioners,* 232 Mass. 309. *Sciola's Case,* 236 Mass. 407, 413, 414 (rule of the department of labor and industries to prevent accidents, G. L. [Ter. Ed.] c. 149, § 6). *Chelsea* v. *Treasurer & Receiver General,* 237 Mass. 422, 431. *Police Commissioner of Boston* v. *Boston,* 239 Mass. 401, 407 (police commissioner may determine accommodations to be provided by city). *Bradley* v. *Zoning Adjustment Board of Boston,* 255 Mass. 160, 171. *Roberto* v. *Department of Public Utilities,* 262 Mass. 583, 587. *General Outdoor Advertising Co. Inc.* v. *Department of Public Works,* 289 Mass. 149, 162, 163. *Universal Machine Co.* v. *Alcoholic Beverages Control Commission,* 301 Mass. 40.

The order in question was plainly a valid exercise of the police power of the Commonwealth. Though made by the State department of public health, it was made under a valid delegation of power by the Legislature, and has the same force as though made by the Legislature itself. There was no constitutional need to give a hearing to the town. The Legislature was dealing with an emergency affecting many water systems throughout the Commonwealth. For the department to hold a hearing in each case would delay needed action and tend to defeat the purpose of the statute. The department did not act hastily. Four months before the order in question was made it had notified the town of the need of chlorination. The point made by the town that its water is naturally pure is beside the point. The department reasonably could find that the guard placed over the water supply could not insure against pollution by disease producing organisms introduced by enemy agents or sympathizers, and that chlorination would reduce the danger to public health if such pollution should take place. The

action of the department was of the very kind contemplated by the statute. The problem was the business of the Commonwealth, and not that of the town of Hudson alone. An epidemic originating in Hudson might sweep the Commonwealth. The town cannot ask the courts to try the legislative question whether chlorination is needed. *New England Telephone & Telegraph Co.* v. *Department of Public Utilities,* 262 Mass. 137, 147. Still less has it the right to nullify the order because not convinced of its necessity. There was never any sufficient reason for the town to doubt the validity of the order or to refuse to obey it.

Now that the town has exhausted its legal remedies in opposing the order, and its duty to obey the order has been established in the courts, no lawful course remains open for the town, its officers and its voters, except prompt and complete obedience to the legislative mandate and to a judicial decree establishing the duty to obey that mandate. With the ordering of such a decree, our function normally would end. We do not ordinarily find it necessary to detail the measures that may be taken for the execution of a judgment or decree, or to point out the path that leads to the jail door. We commonly assume that municipalities and public officers will do their duty when disputed questions have been finally adjudicated and the rights and liabilities of the parties have been finally determined. *Decatur* v. *Auditor of Peabody,* 251 Mass. 82, 90. *Police Commissioner of Boston* v. *Boston,* 239 Mass. 401, 409. When a decree runs against a municipality, a subordinate agency of government, to which have been delegated certain law-making functions (*Commonwealth* v. *Kimball,* 299 Mass. 353, 356, 357; G. L. [Ter. Ed.] c. 278, § 15), and which itself expects and may require obedience from individuals to its by-laws and regulations, it may rightly be expected to set an example of obedience to law.

We say more in the present case only because of a contention made by counsel for the defendant town which is without precedent in our experience. He contends that the power to appropriate money of the defendant town is vested exclusively in the voters at town meeting (*Young* v. *West-*

*port*, 302 Mass. 597); that they have a right to act according to their untrammeled judgment, and may refuse to appropriate money even to discharge adjudicated duties or obligations of the town; that the Commonwealth and its courts are powerless unless the voters of the town in town meeting give their approval and concurrence; that when "unquestioned [unquestioning?] obedience is imposed upon the people," even upon the people of a subordinate governmental unit like a town, and even obedience to an order of the legislative branch of the State government adjudged valid by the judicial branch, then "democracy is dead"; and consequently, since a decree would be futile and unenforceable, that this court should order none.

That argument is so full of dangerous errors, and if relied on by the town and its officers and inhabitants might lead to such serious consequences to them, that we are unwilling by silence to permit counsel or his clients to remain under the delusion that a town may thus safely defy the Commonwealth and its courts. A town is not an independent sovereignty. It is merely a subordinate agency of State government. It is a creature of the Commonwealth, from which are derived all its powers and those of its voters and officers. *Burnham* v. *Mayor & Aldermen of Beverly*, 309 Mass. 388, 389. *County of Essex* v. *Newburyport*, 254 Mass. 232, 237. *Chelsea* v. *Treasurer & Receiver General*, 237 Mass. 422, 432. It is true that the existence of towns, and action by the inhabitants at town meetings, are contemplated by the Constitution (*Duffy* v. *Treasurer & Receiver General*, 234 Mass. 42, 50), and that the form of government of a town has been described as pure democracy as distinguished from representative government. *Wood* v. *Milton*, 197 Mass. 531, 533. *Opinion of the Justices*, 229 Mass. 601, 607, 608. It is true that the representative government of a city or a limited town meeting cannot be substituted for the original form of town meeting except as provided in arts. 2 and 70 of the Amendments to the Constitution, the latter of which was ratified on November 2, 1926. *Larcom* v. *Olin*, 160 Mass. 102. *Opinion of the Justices*, 229 Mass. 601. *Attorney General* v. *Methuen*, 236 Mass. 564, 570, et seq. *Fitzgerald* v.

*Selectmen of Braintree,* 296 Mass. 362. See also arts. 29 and 45 of the Amendments.

But the powers of a town and of its town meeting, and the very existence of the town, are subject to the will of the Legislature. *Weymouth & Braintree Fire District* v. *County Commissioners of Norfolk,* 108 Mass. 142, 144. *Chandler* v. *Boston,* 112 Mass. 200. *Stone* v. *Charlestown,* 114 Mass. 214. *Hill* v. *Boston,* 122 Mass. 344, 357. *Agawam* v. *County of Hampden,* 130 Mass. 528. *Hodgdon* v. *Haverhill,* 193 Mass. 406. *Boston, petitioner,* 221 Mass. 468. *Lee* v. *Lynn,* 223 Mass. 109, 112. *County of Essex* v. *Newburyport,* 254 Mass. 232, 237. *Opinion of the Justices,* 303 Mass. 631, 639. Powers exercised by the voters in town meeting or by officers chosen by them may be taken away and vested in officers appointed by the Governor. *Commonwealth* v. *Plaisted,* 148 Mass. 375, 383–387. *Moore* v. *Election Commissioners of Cambridge,* 309 Mass. 303, 316, 317, 321. In *Broadhurst* v. *Fall River,* 278 Mass. 167, 170, 171, it was held that the control of the financial affairs of a city might be taken away from its voters and officers and vested in a State board. The language used by the court in that case applies equally to towns. Similar legislation actually exists with respect to at least two towns. St. 1933, c. 341; St. 1935, c. 470; St. 1939, c. 514 (Millville). St. 1932, c. 223; St. 1935, c. 266; St. 1938, c. 291; St. 1941, c. 189 (Mashpee). In *Moore* v. *Election Commissioners of Cambridge,* 309 Mass. 303, 321, it was said, "The General Court has power to restrict the privilege of local self-government."

Plainly a town is in no position to defy its creator, the Commonwealth, or to attempt to nullify legislative mandates issued under the authority of the General Court.

The statute (St. 1942, c. 8) expressly gives to two courts "jurisdiction in equity to enforce any such order." The order was properly directed to the "town of Hudson" which was "maintaining" the water supply in question. A town is fully subject to the judicial power. Decrees in equity have often been made against towns. Courts have ordered towns as well as cities to perform affirmative acts. *Frost* v. *Belmont,* 6 Allen, 152, 157, 164. *Attorney General* v. *Boston,*

123 Mass. 460. *McCarthy* v. *Street Commissioners of Boston,* 188 Mass. 338. *Brown* v. *Peabody,* 228 Mass. 52, 57. *Ring* v. *Woburn,* 311 Mass. 679. *Hayes* v. *Brockton,* 313 Mass. 641, 651. See also *Department of Public Utilities* v. *Trustees of the New York, New Haven & Hartford Railroad,* 304 Mass. 664, 671, 675. Instead of the jurisdiction of the courts being restricted by reason of difficulty in enforcing their decrees, as the defendants contend, the true principle is that a grant of jurisdiction to the courts carries with it every power necessary to enable them to enforce their decrees and make them completely effective. *Jones* v. *Boston Mill Corp.* 4 Pick. 507, 510, 511. *Grew* v. *Breed,* 12 Met. 363, 370, 371. *Frost* v. *Belmont,* 6 Allen, 152, 157. *Commonwealth* v. *New York Central & Hudson River Railroad,* 206 Mass. 417, 429. *Walton Lunch Co.* v. *Kearney,* 236 Mass. 310, 315, 316. *Opinion of the Justices,* 314 Mass. 767, 777, 779.

In equity the traditional method of enforcing a decree is by a petition for attachment of the person for contempt. *Root* v. *MacDonald,* 260 Mass. 344. *Blankenburg* v. *Commonwealth,* 260 Mass. 369, 373. *Commissioner of Banks* v. *Tremont Trust Co.* 267 Mass. 331, 334, 337. Contempt consisting of failure to obey a decree may be treated as "civil" contempt,[1] by an order of imprisonment until compliance (*Cherry* v. *Cherry,* 253 Mass. 172), or by a compensatory or remedial fine payable to the injured party. *New York Central Railroad* v. *Ayer,* 253 Mass. 122. *Root* v. *Mac-Donald,* 260 Mass. 344, 361–363. *Commissioner of Banks* v. *Tremont Trust Co.* 267 Mass. 331, 333, 337. *Parker* v. *United States,* 126 Fed. (2d) 370, 380; *S. C.* 135 Fed. (2d) 54. In *New Jersey* v. *New York City,* 290 U. S. 237, 240, a municipality was required to pay $5,000 to the plaintiff

---

[1] For the distinction between so called civil and criminal contempts, compare *Cherry* v. *Cherry,* 253 Mass. 172, *Root* v. *MacDonald,* 260 Mass. 344, *Blankenburg* v. *Commonwealth,* 260 Mass. 369, 373, and *Commissioner of Banks* v. *Tremont Trust Co.* 267 Mass. 331, 334, with *Wireless Specialty Apparatus Co.* v. *Priess,* 246 Mass. 274, *Blankenburg* v. *Commonwealth,* 260 Mass. 369, *Kelley, petitioner,* 292 Mass. 198, *Woodbury* v. *Commonwealth,* 295 Mass. 316, *Opinion of the Justices,* 301 Mass. 615, *Dolan* v. *Commonwealth,* 304 Mass. 325, *Silverton* v. *Commonwealth,* 314 Mass. 102, *Opinion of the Justices,* 314 Mass. 767, *Berlandi* v. *Commonwealth,* 314 Mass. 424, and *Nye* v. *United States,* 313 U. S. 33. Many cases are collected in 43 Columbia Law Rev. 780.

for every day of disobedience. Similar action was taken against a municipality in *Department of Health* v. *Borough of Fort Lee,* 108 N. J. Eq. 139.

On the other hand, such a contempt may be dealt with as "criminal" contempt, by a penal sentence of imprisonment or by a penal fine. Of course the fear of such punishment, like the fear of punishment for crime in general, may have a coercive effect. It may induce compliance with the decree. Where the duty to perform the decree continues, and performance remains possible, it is hard to see why repeated penalties may not be imposed for failure to obey during successive periods of time. See *Commonwealth* v. *Connors,* 116 Mass. 35; *Commonwealth* v. *Robinson,* 126 Mass. 259; *Commonwealth* v. *Dunster,* 145 Mass. 101; *Commonwealth* v. *Goulet,* 160 Mass. 276; *Commonwealth* v. *Peretz,* 212 Mass. 253, 254; *Commonwealth* v. *Runge,* 231 Mass. 598.

Of course attachment of the person is impossible in the case of a municipality or other corporation. But like other corporations, a town or city may be fined for contempt in disobeying a decree. *Marson* v. *Rochester,* 112 App. Div. (N. Y.) 51, affirmed 185 N. Y. 602. *Department of Health* v. *Borough of Fort Lee,* 108 N. J. Eq. 139. See also *New Jersey* v. *New York City,* 290 U. S. 237, 240; *Commonwealth* v. *Dedham,* 16 Mass. 141; *Colburn* v. *Kittridge,* 131 Mass. 470; *Telegram Newspaper Co.* v. *Commonwealth,* 172 Mass. 294; *Commonwealth* v. *New York Central & Hudson River Railroad,* 206 Mass. 417, 429; *Mayor, Aldermen & Commonalty of New York* v. *New York & Staten Island Ferry Co.* 64 N. Y. 622; *Butler County* v. *Pittsburgh, Harmony, Butler & New Castle Railway,* 298 Penn. St. 347. For the satisfaction of a judgment or decree for payment of money by a town, the property of any inhabitant may be taken. *Opinion of the Justices,* 297 Mass. 582, 586, 587.

Any person, whether lawyer or layman, though not a party to the cause, who counsels or aids a party in disobeying a decree, is himself punishable. *Seaward* v. *Paterson,* [1897] 1 Ch. 545. *Chisolm* v. *Caines,* 121 Fed. 397, 401. *Huttig Sash & Door Co.* v. *Fuelle,* 143 Fed. 363. *Alemite Manuf. Corp.* v. *Staff,* 42 Fed. (2d) 832. *Odell* v. *Bausch &*

*Lomb Optical Co.* 91 Fed. (2d) 359. *National Labor Relations Board* v. *Blackstone Manuf. Co. Inc.* 123 Fed. (2d) 633. *King* v. *Barnes,* 113 N. Y. 476. *In re Cooley,* 95 N. J. Eq. 485. *In re Wholesale Licensed Alcoholic Beverage Salesmen's Union,* 125 N. J. Eq. 539. *State* v. *Pittsburg,* 80 Kans. 710. Note, 15 Am. L. R. 386.

Officers of a town or city may be required to do all acts within their power to cause the municipality to obey a decree against it, and may be punished for failure to do so. *Commissioners* v. *Sellew,* 99 U. S. 624. *Wilson* v. *United States,* 221 U. S. 361, 376. *Federal Trade Commission* v. *Standard Education Society,* 302 U. S. 112, 119. *The King* v. *Council of the Metropolitan Borough of Poplar,* [1922] 1 K. B. 72. See also *Hayes* v. *Brockton,* 313 Mass. 641, 651; *Morton* v. *Superior Court,* 65 Cal. 496; *Scranton* v. *Peoples Coal Co.* 274 Penn. St. 63; *Child* v. *Washed Sand & Gravel Co.* 181 Minn. 559; *Parker* v. *United States,* 126 Fed. (2d) 370; *S. C.* 135 Fed. (2d) 54; *New York Central Railroad* v. *Conlin Buss Lines, Inc.* 258 Mass. 498. It is not at all clear that compliance with the decree, to say nothing of penalties, could be escaped as suggested in the brief for the defendants by having the officers "resign from office before they could be held in contempt." *Andrews* v. *Registrars of Voters of Easton,* 246 Mass. 572. *Tymon* v. *Commissioner of Public Works of Quincy,* 258 Mass. 370, 371. *Murphy* v. *Utter,* 186 U. S. 95, 101, 102. *Comley* v. *Lawlor,* 120 Conn. 610, 102 Am. L. R. 938, and note. *Middle States Utilities Co. of Iowa* v. *Osceola,* 231 Iowa, 462.

In "cases of extreme emergency involving the health or safety of persons or property," two thirds of the selectmen may authorize the incurring of liability on behalf of a town in excess of appropriations. G. L. (Ter. Ed.) c. 44, § 31. We are not at all convinced that a refusal of the voters to appropriate money for compliance with the legislative order and the decree of the court in this case would not create such an emergency and give to the commissioners of public works and the selectmen a right and a duty to act. *Continental Construction Co.* v. *Lawrence,* 297 Mass. 513. *Ring* v. *Woburn,* 311 Mass. 679, 687, 693. Moreover, we are by

no means prepared to concede that the voters, to whom the law has entrusted the duty to make appropriations, stand any differently from officers with respect to their duty to use their powers so as to cause the town to obey the order and decree in this case. *The King* v. *Wix,* 2 B. & Ad. 197. See also *Wilson* v. *United States,* 221 U. S. 361, 376; *Federal Trade Commission* v. *Standard Education Society,* 302 U. S. 112, 119.

We make no attempt to list all the weapons in the ample armory of equity. We merely point out that courts of equity do not lack the means of doing their duty.

We still have a right to assume that upon sober second thought the town and its officers and inhabitants will not continue to defy the legislative mandate, but will obey the decree which will follow this decision. For that reason we shall not put forth at this time the full judicial power that might be brought into operation to compel obedience to that decree. It will be time enough to do that when it appears — if it ever does appear — that the town will not do its duty as that duty is now adjudicated. In that event, a bill to carry the decree into execution would lie, if needed, against such persons as the plaintiff might be advised to join with the town as defendants. *Grew* v. *Breed,* 12 Met. 363. *Beacon Oil Co.* v. *Maniatis,* 284 Mass. 574, 577. *New Jersey* v. *New York City,* 296 U. S. 259. If persons constituting a large class should be made defendants, the practice should follow *Reynolds* v. *Davis,* 198 Mass. 294, 300, 301.

For the present it seems sufficient to order the entry of a final decree that will (1) require the defendant town to pay costs to the plaintiff, (2) command the defendant town, and its commissioners of public works and all its officers, agents, servants and attorneys whose action may be required in order to cause the decree to be obeyed, forthwith to obey the order of the State department of public health set forth in the bill by providing and making ready for use at the expense of the defendant town chlorinating equipment sufficient to chlorinate all the water supplied by said town through its water supply system, and (3) command

the defendant selectmen forthwith to cause a town meeting of the defendant town to be called and held, and forthwith to cause to be inserted in the warrant therefor and to cause to be submitted to the voters at such town meeting in accordance with law, an article or articles that when adopted by said voters will cause such equipment to be forthwith provided and made ready for use at the expense of the defendant town.

*Ordered accordingly.*