Hillsborough,
No. 4484.

STATE *v.* GOFFSTOWN.

Argued February 21, 1956.

Decided March 6, 1956.

*Arthur E. Bean, Jr.*, Assistant Attorney General (by brief and orally), for the State.

*Wyman, Starr, Booth, Wadleigh & Langdell* (*Mr. Booth* orally), for the defendant.

KENISON, C. J. After investigation, studies and a public hearing (RSA 149:6) the New Hampshire Water Pollution Commission, hereinafter called Commission, recommended to the Legislature that the Piscataquog River and its tributaries be classified as B-1. This recommendation was adopted. Laws 1953 *c.* 38, *s.* 1. The classification of these waters and others made by the Legislature are listed alphabetically in a note following RSA 149:6 which appears at pages 1051-1055.

The Legislature has provided that class B-1 waters shall meet certain standards and "shall be considered as being acceptable for bathing and other recreational purposes and, after adequate treatment, for use as water supplies." RSA 149:3 II (a). This same section provides that there shall be no disposal of sewage into such waters unless it receives adequate treatment. The act provides that after waters have been classified by the Legislature, the Commission may reinvestigate conditions of pollution and make further recommendations to the Legislature. RSA 149:7. Provision is also made in RSA 149:9 for a petition for variance to be filed in the Superior Court. No petition for reclassification or variance was filed in this case. The Commission is authorized to exercise general supervision over water pollution and the disposal of waste, (RSA 149:4), and this applies to municipalities as well as to individuals and corporations. RSA 149:1.

The statute recognizes that the elimination of pollution from the public waters of the State results in general public benefits and therefore provides that bonds or notes issued by municipalities for a sewage system or disposal plant may be guaranteed unconditionally by the State. RSA 149:5. Another statute specifically provides that bond issues for municipal sewage treatment works are outside the limits of indebtedness which are provided generally for municipalities. RSA 33:5.

It is the contention of the defendant that the order of the Commission is void and unconstitutional as a delegation of legislative power since there is "no limit as to the amount of indebtedness which any given town may be required by the Commission to incur." The defendant relies on *Ferretti* v. *Jackson*, 88 N. H. 296. Insofar as this contention is predicated on the proposition that statutes regulating water pollution invade the right of local self-government, it must be rejected on the basis of both precedent and history. "Towns have only the powers which the State grants them." *Eaton* v. *Bragg*, 96 N. H. 407, 408. After reviewing the authorities from 1817 to 1937 in *Amyot* v. *Caron*, 88 N. H. 394, 399, it was concluded that "there has been a consistent and unvarying support of the principle of complete legislative control of local government." The plenary control of the Legislature over municipalities is no less today than it was over a century ago. *Opinion of the Justices*, 99 N. H. 540, 541. Since the debt limits of a municipality are peculiarly within the legislative power, they may be increased or decreased in order to promote the State's

interest in public health. Examples of the exercise of this power are found in statutes enacted at almost every legislative session. Cf. Laws 1955, c. 439, s. 1; *Goodrich Falls Co.* v. *Howard,* 86 N. H. 512, 522.

It may be argued that if the State is interested in abating water pollution, it should bear the expense of correcting the condition. However the failure of the State to do this, does not result in any unlawful delegation to the Commission which orders it done in accordance with a classification made by the Legislature itself. A similar argument was made and rejected in *Amyot* v. *Caron, supra,* 401. The power of the State Board of Health to require the construction of a sewage system to prevent contamination of a public water supply was sustained in *Meredith* v. *State,* 94 N. H. 123, 131. In that case it was emphasized "that the Legislature has recognized the imperative necessity for the establishment of sewers by providing that their cost shall not be subject to the ordinary limitations upon the public debt." The same reasoning applies to the prevention of water pollution under RSA 149:3 II (a).

The legislative authority to enact statutes or to provide for the issuance of orders and regulations for the protection of public health, without involving an unlawful delegation of legislative power, is broad and extensive. *State* v. *Normand,* 76 N. H. 541; *State* v. *Griffin,* 69 N. H. 1. However, the authority is not limitless. *Richardson* v. *Beattie,* 98 N. H. 71; *Willis* v. *Wilkins,* 92 N. H. 400. Health statutes, regulations and orders, may be expensive and burdensome but they cannot be confiscatory or unreasonable. *State* v. *Normand, supra,* 543. Cf. *Rye* v. *Rockingham County,* 68 N. H. 268, 269. In the present case it is to be noted that the Commission's order does not specify the amount of money that is required or the method that must be used to abate the water pollution caused by the town. It appears that if the cost estimates used by the town are accepted, the tax rate would be increased by two dollars to three dollars per thousand valuation. The fact that the tax rate would be increased by this amount does not demonstrate that the Commission's order is unreasonable or confiscatory. Neither does it appear that the debt of the town in relation to the last assessed valuation as equalized by the Tax Commission would be prohibitive as a matter of law. RSA 33:1, as amended by Laws 1955, c. 329, s. 3.

On the facts of this case the question transferred is answered in the affirmative. The Superior Court may determine the conditions

and time limitations that may be necessary to permit compliance with the order of the Commission in a reasonable way within a reasonable time. The Legislature has provided that the act may be enforced in the courts (RSA 149:8 I) and hence this order may be enforced by injunction, contempt or by the fines authorized by RSA 149:19. In this connection the Superior Court may use its adequate and ample armory of equitable powers to enforce the principal provisions of any decree that it may issue. RSA 498:1; *Commonwealth* v. *Hudson,* 315 Mass. 335; RSA 149:8 I; *Fowler* v. *Beckman,* 66 N. H. 424. It is unnecessary to decide whether as a last resort reliance may be placed on RSA ch. 530 which provides that the real property of the officers and inhabitants of the town may be taken on execution.

*Remanded.*

All concurred.